Todd D. VESS, a minor; Deborah Vess, his Guardian ad Litem, Individually, on behalf of those similarly situated, and on behalf of the General Public of the State of California, Plaintiffs–Appellants,

v.

CIBA–GEIGY CORP. USA; Novartis Pharmaceuticals Corporation; Children and Adults with Attention–Deficit/Hyperactivity Disorder (CHADD); American Psychiatric Association, Defendants–Appellees.

No. 01–55834.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2002.

Filed Jan. 31, 2003.

Donald F. Hildre and Peggy Reali, Dougherty, Hildre, Dudek & Haklar, San Diego, CA; John P. Coale and Julia McInerny, Coale, Cooley, Lietz & McInerny, Washington, DC; Richard F. Scruggs, Sidney A. Backstrom and Robin Reid Boswell, Scruggs Legas, Pascagoula, MS; Marc C. Saperstein and Kevin Decie, Davis, Saperstein & Solomon, Teaneck, NJ; C. Andrews Waters, Waters & Kraus, Dallas, TX, for the plaintiffs-appellants.

Roxanne M. Wilson, Arter & Hadden LLP, Los Angeles, CA; James A. O'Neal, Bruce Jones, Joseph M. Price, and Bridget M. Ahmann, Faegre & Benson LLP, Minneapolis, MN, for defendants-appellees Ciba–Geigy/Novartis.

Edward D. Chapin, Chapin, Shea, McNitt & Carter, San Diego, CA; Gerald D.C. Zingone, Arent, Fox, Kintner, Plotkin & Kahn, PLLC, Washington, DC, for defendant-appellee Children and Adults With Attention Deficit/Hyperactivity Disorder.

David J. Noonan, Post Kirby Noonan & Sweat, San Diego, CA; Luther Ziegler, William L. Anderson and Laurel Pyke Malson, Crowell & Moring LLP, Washington, DC, for defendant-appellee American Psychiatric Association.

Before WARDLAW, W. FLETCHER, Circuit Judges, and WHYTE,* District Judge.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

Plaintiff–Appellant Todd D. Vess brought this diversity class action claiming that three defendants acted illegally to increase sales of the prescription drug Ritalin, in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 et seq., and California's unfair business practice laws, Cal. Bus. & Prof.Code §§ 17200, 17500. The district court dismissed Vess's complaint as to all three defendants for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b); dismissed the complaint as to two of the defendants for failure to state a claim under Rule 12(b)(6); granted all three defendants' motion to strike under California's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, Cal. Civ. Pro.Code § 425.16; and granted attorneys' fees to all three defendants pursuant to the anti-SLAPP statute.

For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Ritalin, a Schedule II controlled substance, is commonly prescribed for Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder ("ADD/ADHD"). Vess alleges that he "was prescribed, and

---

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

purchased, and ingested" Ritalin when he was nine years old. Defendants–Appellees are: Novartis Pharmaceuticals ("Novartis") (the successor in interest to named defendant Ciba–Geigy Corp.), the primary or exclusive manufacturer of Ritalin in the United States since 1955; the American Psychiatric Association ("APA"), publisher of the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"), commonly used by medical professionals to diagnose ADD/ADHD; and the nonprofit advocacy group Children and Adults with Attention Deficit/Hyperactivity Disorder ("CHADD").

Vess's first amended complaint alleges that the three defendants have acted illegally to increase sales of Ritalin. The complaint alleges an illegal conspiracy involving all three defendants, and illegal individual actions (and inactions) by defendant Novartis.

The complaint alleges that Novartis, the manufacturer of Ritalin, has made substantial financial contributions to the APA and CHADD, and that it has failed to disclose the extent of those contributions. It further alleges that Novartis "planned, conspired, and colluded" with the APA and CHADD to "develop, promote, broaden and confirm the diagnosis" of ADD/ADHD, in order to increase the market for Ritalin. The complaint also alleges that Novartis has failed fully to disclose information regarding the side effects of Ritalin, and that Novartis has failed to disclose the drug's "limited effectiveness."

The complaint alleges that the APA, as part of the conspiracy with Novartis and CHADD, "fraudulently and falsely" represented that the diagnostic criteria for ADD in the DSM were scientifically reliable; that "[i]n an effort to cover up this fraud," the APA improperly clustered data from tests of diagnostic criteria for ADD with data from tests of diagnostic criteria for different and unrelated medical conditions;

and that the APA "purposefully and fraudulently" failed to use objective criteria in the creation and promulgation of diagnostic criteria. The complaint further alleges that the APA has "fraudulently failed to disclose, through misrepresentations and omissions," the role of the drug industry and, in particular, Novartis, "in the creation, promulgation and revisions of the DSM or the financial connection between its committee members and [Novartis]."

Finally, the complaint alleges that CHADD, in exchange for financial contributions from Novartis, "deliberately attempted to increase the sales of Ritalin, and to increase the supply of [the drug] available in the United States, and to reduce or eliminate laws and restrictions concerning the use of Ritalin." The complaint alleges that during this time CHADD was misrepresenting itself to the public as a neutral nonprofit organization dedicated to persons suffering from ADD/ADHD. In support of its allegation that CHADD participated in the fraudulent conspiracy, the complaint alleges that CHADD failed to disclose "that it has received significant if not life sustaining contributions from [Novartis]," and contends that CHADD has "distributed misinformation."

Vess asserts the same three causes of action against all of the defendants. Vess's first cause of action asserts a violation of Cal. Civ.Code § 1770, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale … of goods or services to any consumer." Vess's second cause of action asserts a violation of Cal. Bus. & Prof.Code § 17200, which prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Vess's third

cause of action asserts a violation of Cal. Bus. & Prof.Code § 17500, which prohibits "any statement" that. is "untrue or misleading" and made with the "intent directly or indirectly to dispose of" property or services.

All three defendants moved to dismiss Vess's original complaint under Federal Rule of Civil Procedure 9(b) for failure to plead averments of fraud with particularity. The APA and CHADD also moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. All three defendants filed motions to strike pursuant to California's anti-SLAPP statute and for attorneys' fees under that statute. Without ruling on the motions, the district court granted Vess leave to file a first amended complaint. After Vess did so, the defendants renewed their motions as to the first amended complaint (the allegations of which are described above). The district court granted without prejudice all three defendants' motion to dismiss Vess's complaint under Rule 9(b), and the APA and CHADD's motion to dismiss under Rule 12(b)(6). It did not rule on the motions to strike under the anti-SLAPP statute. Vess declined to amend his complaint again. The district court then dismissed with prejudice under Rule 9(b) as to all three defendants, and under Rule 12(b)(6) as to the APA and CHADD. It granted the motions to strike and awarded attorneys' fees to all three defendants under the anti-SLAPP statute.

■ We review dismissals under Rules 9(b) and 12(b)(6) de novo. *See United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1051 (9th Cir. 2001); *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1035 (9th Cir.2002). We review the granting of defendants' motion to strike under the anti-SLAPP statute de novo. *See Metabolife Int'l., Inc. v. Wornick,* 264 F.3d 832, 839 (9th Cir.2001). We review an award of attorneys' fees pursu-

ant to state law for abuse of discretion. *See Roy Allen Slurry Seal v. Laborers Int'l Union,* 241 F.3d 1142, 1145 (9th Cir. 2001).

## II. Applicability of Rule 9(b)

■ Vess contests two foundational propositions concerning the applicability of Rule 9(b). The first proposition is that the pleading requirements of Rule 9(b) apply to both state- and federal-law causes of action. Vess argues that the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), precludes application of Rule 9(b) to a state-law cause of action, but his argument is based on a misunderstanding of *Erie* and of the scope of the federal rules. *Erie* applies irrespective of whether the source of subject matter jurisdiction is diversity or federal question. *See Maternally Yours v. Your Maternity Shop, Inc.,* 234 F.2d 538, 540 n. 1 (2d Cir.1956). The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

■ The Constitution and the Rules Enabling Act authorize and, at the same time, limit the scope of the federal rules. The "constitutional provision for a federal court system" confers power on Congress to regulate the procedures in the federal courts, but limited to "a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Id.* at 472, 85 S.Ct. 1136. The Enabling Act similarly implements the constitutional power and limits the scope of its implementation. The Enabling Act authorizes the adoption of federal rules, but provides that "[s]uch rules shall not abridge, enlarge or modify any substantive

right." 28 U.S.C. § 2072. A federal district court can refuse to apply a Federal Rule of Civil Procedure in a civil case "only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136. In other words, if a Federal Rule of Civil Procedure is valid under the Constitution and the Enabling Act, it applies according to its terms in all civil cases in federal district court.

With only one exception, the federal rules have the same meaning in suits based on federal and state law. The exception is Rule 3, specifying when a civil suit "commences" for purposes of the statute of limitations. The Supreme Court has construed Rule 3 to apply in suits brought under federal law, but not in suits brought under state law. *See West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) (federal law); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (state law); *see also Sain v. City of Bend,* 309 F.3d 1134 (9th Cir.2002). The Court's different reading of Rule 3, depending on whether federal or state law is involved, has been heavily criticized, *see, e.g.,* Stephen B. Burbank, *Of Rules and Discretion: The Supreme Court, Federal Rules and Common Law,* 63 Notre Dame L.Rev. 693, 698–719 (1988), and the Court has not applied this somewhat unconventional interpretative technique to other rules. Specifically, the Court has never suggested that Rule 9(b) means one thing when applied to state causes of action and another when applied to federal causes of action.

■ It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (emphasis in original). *See also Jenkins v. Commonwealth Land Title Ins. Co.,* 95 F.3d 791, 796 (9th Cir.1996) (applying Rule 9(b) to pleading of state-law cause of action); *Minger v. Green,* 239 F.3d 793, 800 (6th Cir.2001) (same); *Roberts v. Francis,* 128 F.3d 647, 650–51 (8th Cir.1997) (same). We therefore reject Vess's argument that we should refuse to apply Rule 9(b) to his state-law causes of action in this diversity case.

■ The second proposition is that Rule 9(b) applies to "averments of fraud" in all civil cases in federal district court, and that in cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud. Vess argues that Rule 9(b) does not apply at all in this case because the state statutory claims he asserts do not require a showing of fraud. Vess is correct that fraud is not an essential element of the California statutes on which he relies. *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). But he is not correct in concluding that his averments of fraud therefore escape the requirements of the rule.

In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must

satisfy the particularity requirement of Rule 9(b). *See, e.g., Anderson v. Clow (In re Stac Elecs. Sec. Litig.),* 89 F.3d 1399, 1404–05 (9th Cir.1996) ("We now clarify that the particularity requirements of Rule 9(b) apply to claims brought under Section 11 [of the 1933 Securities Act] when, as here, they are *grounded in fraud.*" (emphasis added)); *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1223 (1st Cir.1996) ("[D]espite the minimal requirements of Sections 11 and 12(2) [of the 1933 Securities Act], a complaint asserting violations of those statutes may yet *'sound[ ] in fraud.'* For example, if a plaintiff were to attempt to establish violations of Sections 11 and 12(2) as well as the anti-fraud provisions of the Exchange Act through allegations in a single complaint of a *unified course of fraudulent conduct,* fraud might be said to 'lie[ ] at the core of the action.'" (emphasis added) (citation omitted, third and fourth brackets in original)); *Melder v. Morris,* 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) ("Appellants maintain that their 1933 Securities Act claims were inappropriately subjected to the Rule 9(b) heightened pleading standard. This argument is untenable in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims. When 1933 Securities Act claims are *grounded in fraud* rather than negligence as they clearly are here, Rule 9(b) applies." (emphasis added)); *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 288 (3d Cir.1992) ("[W]e determine whether Rule 9(b) applies to § 11 and § 12(2) claims *grounded in fraud,* a question not yet decided by this court.... [T]he plain language of the rule clearly encompasses § 11 and § 12(2) claims based on fraud like those before us." (emphasis added)).

In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. The text of Rule 9(b) requires only that in "all *averments of fraud* ..., the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b) (emphasis added). The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.

In such cases, application of Rule 9(b)'s heightened pleading requirements only to "averments" of fraud supporting a claim rather than to the claim as a whole not only comports with the text of the rule; it also comports with the rule's purpose of protecting a defendant from reputational harm. As we stated in *In re Stac,* "Rule 9(b) serves to ... protect professionals from the harm that comes from being subject to fraud charges." 89 F.3d at 1405. *See also Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) (Rule 9(b)'s heightened pleading requirement "safeguards defendant's reputation and goodwill from improvident charges of wrongdoing"). Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case. To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

 This circuit has not analyzed the application of Rule 9(b) in a case where fraud is not an essential element of the claim, and where allegations of both fraudulent and non-fraudulent conduct are made in the complaint. Two of our sister cir-

cuits have provided such an analysis, however, and we now join them in holding that in a case where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a). As the Fifth Circuit wrote:

> Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to *disregard* averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir.2001) (emphasis added). As the Eighth Circuit elaborated:

> The only consequence of a holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be *stripped from the claim.* The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive.

*Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.),* 130 F.3d 309, 315 (8th Cir.1997) (emphasis added). Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should "disregard" those averments, or "strip" them from the claim. The court should then examine the allegations that remain to determine whether they state a claim.

### III. Motions Under Rules 9(b) and 12(b)(6)

#### A. Novartis

Novartis moved to dismiss Vess's first amended complaint for failure to plead with particularity under Rule 9(b), but made no motion under Rule 12(b)(6). Vess asserts that alleged actions (and inactions) by all three defendants, including Novartis, state claims under Cal. Civ.Code § 1770 and Cal. Bus. & Prof.Code §§ 17200 and 17500. Fraud is not an essential element of a claim under these statutes. Therefore, to the extent that Vess alleges fraud, his allegations should be "disregarded," *Lone Star,* 238 F.3d at 368, or "stripped from the claim," *Nations-Mart,* 130 F.3d at 315, for failure to satisfy Rule 9(b). To the extent that Vess does not aver fraud, however, his allegations need not satisfy Rule 9(b).

Vess alleges that Novartis fraudulently conspired with the APA and CHADD to increase sales and sustain the price of Ritalin. As we discuss in the next two sections, the allegations of fraudulent conspiracy with the APA and CHADD do not satisfy the heightened pleading standards of Rule 9(b). We therefore "disregard" the conspiracy allegations against Novartis.

[4] However, at least some of Vess's non-conspiracy allegations against Novartis are not based on fraud. Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word "fraud" is not used). Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir.1996) (quoting *Bank of the West v. Valley Nat'l Bank of Ariz.,* 41 F.3d 471, 477 (9th Cir. 1994), quoting *Hackethal v. Nat'l Cas. Co.,* 189 Cal.App.3d 1102, 234 Cal.Rptr. 853, 857 (Cal.Ct.App.1987)). In some of his non-conspiracy allegations against Novartis, Vess neither mentions the word "fraud," nor alleges facts that would necessarily constitute fraud. For example, Vess

alleges that Novartis: (1) "negligently" failed to disclose its financial relationship with the APA and CHADD, knowing that the information would be important to those diagnosed with ADD/ADHD and to those who were subsequently prescribed Ritalin; (2) took steps to increase the sales of Ritalin in various ways; (3) failed to warn consumers that the full range of Ritalin's side effects has not yet been adequately studied; (4) failed to disclose the limited effectiveness of its product; and (5) failed to disclose that the clinical literature on ADD/ADHD referred to in the DSM is of poor quality.

Because Vess's allegations against Novartis do not rely entirely on a unified fraudulent course of conduct, his claims against Novartis are not "grounded in fraud" as were the claims in *In re Stac, Melder,* and *Shapiro.* Rather, many of Vess's allegations describe non-fraudulent conduct, in the same manner as many of the allegations in *Lone Star* and *Nations-Mart.* Those allegations should not have been disregarded or stripped from his complaint pursuant to Rule 9(b). We therefore reverse the district court's dismissal of the entirety of Vess's complaint against Novartis for failure to satisfy Rule 9(b).

Novartis did not move in the district court to dismiss under Rule 12(b)(6) for failure to state a claim. On remand, it will be free to make such a motion to test the legal sufficiency of Vess's surviving non-fraud allegations. We intimate no view on the likely success of such a motion.

### B. American Psychiatric Association

■ The APA moved to dismiss Vess's first amended complaint for failure to plead with particularity under Rule 9(b) and for failure to state a claim under Rule 12(b)(6). The entirety of Vess's complaint against the APA is comprised of allegations of a unified fraudulent course of conduct. Each of his claims against the APA is therefore "grounded in fraud" within the meaning of *In re Stac,* and the complaint as a whole must satisfy the heightened pleading requirements of Rule 9(b).

■ We agree with the district court that Vess's complaint against the APA fails to satisfy Rule 9(b). Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee,* 236 F.3d at 1019 (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993)). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997) (internal quotation marks omitted). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),* 42 F.3d 1541, 1548 (9th Cir.1994).

Vess alleges a fraudulent conspiracy between the APA and the other defendants, but he does not provide the particulars of when, where, or how the alleged conspiracy occurred. He alleges that the APA received financial contributions from Novartis, but he offers scant specifics as to when or between whom the money changed hands. He further alleges that the APA fraudulently included ADD in the DSM even though ADD failed to meet the manual's own diagnostic criteria, but he fails to indicate which criteria it failed to satisfy and how it failed to satisfy them. He charges that the APA sought to conceal its fraud by improperly clustering

testing data for ADD with testing data for other conditions, but the allegation is unsupported by details, such as the names of those conditions. Vess also fails to point to the specific scientific literature that the APA failed to "fully address or actually obscured." Finally, he alleges that the APA misrepresented its connection to Novartis, but he does not identify any specific misrepresentations or specify when and where they occurred. These allegations are not particular enough to satisfy Rule 9(b). *See, e.g., SmithKline Beecham,* 245 F.3d at 1051 (holding that broad allegation that the defendant "knowingly ... changed control numbers [on various tests] to wrongfully represent that the laboratory results fell within an acceptable standard of error," where the plaintiff did not specify the "types of tests implicated in the alleged fraud, identify the [defendant's] employees who performed the tests, or provide any dates, times, or places the tests were conducted," did not satisfy Rule 9(b)); *In re GlenFed,* 42 F.3d at 1547–48 (requiring a plaintiff to state the time, place, and content of an alleged misrepresentation and explain why the statement is false or misleading in order to satisfy Rule 9(b)).

■ When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim. We recognize that there is no explicit basis in the text of the federal rules for a dismissal of a complaint for failure to satisfy Rule 9(b), but it is established law in this and other circuits that such dismissals are appropriate. *See, e.g., Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001) ("[T]he complete absence of particularity in Bly–Magee's first amended complaint fails to satisfy Rule 9(b). We therefore affirm the district court's dismissal ...." (citation omitted)); *In re Burlington Coat Factory Sec.*

*Litig.,* 114 F.3d 1410, 1424 (3d Cir.1997) ("[W]hile dismissal on Rule 12(b)(6) alone would not have been proper, the dismissal on Rule 9(b) grounds was."); *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1021 (5th Cir.1996) ("Because we find that Plaintiffs have failed to adequately plead scienter under Rule 9(b), we hold that the district court did not err in dismissing Plaintiffs' claims for failure to plead fraud with particularity."); *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677 (7th Cir.1992) (holding that the complaint should have been dismissed for failure to comply with Rule 9(b), but remanding to the district court for consideration of whether plaintiff should be permitted to amend).

■ A motion to dismiss a complaint or claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the complaint. In that event, a motion to dismiss under Rule 12(b)(6) would obviously be granted. Because a dismissal of a complaint or claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner. *See Lovelace,* 78 F.3d at 1017 ("We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted."); *Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986) ("The dismissal of a complaint or counterclaim for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be

granted under Fed. [R.] Civ. P. 12(b)(6).""). As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. "[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir.1988) (internal quotation marks omitted) (alteration in original). *See also Bly–Magee*, 236 F.3d at 1019 (when dismissing for failure to comply with Rule 9(b) "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts") (internal quotation marks omitted); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001) (where the plaintiff has requested leave to amend in the event the court is inclined to dismiss on Rule 9(b) grounds, "the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile"). *See also Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir.2003).

■■■ When the APA initially moved to dismiss Vess's complaint for failure to satisfy the heightened pleading requirements of Rule 9(b), the district court did not rule on the motion and allowed Vess to amend his complaint. When the APA renewed its motion as to Vess's first amended complaint, the district court granted the motion without prejudice and with leave to amend. Only after Vess declined to amend his complaint again did the district court dismiss with prejudice under Rule 9(b) for failure to plead with particularity and under Rule 12(b)(6) for failure to state a claim. Given that the claims against the APA in Vess's first amended complaint are grounded in fraud, that Vess has failed to comply with Rule 9(b), and that Vess declined to amend further, we affirm the district court's dismissal with prejudice as to the APA under both Rule 9(b) and Rule 12(b)(6).

### C. Children and Adults with Attention Deficit/Hyperactivity Disorder

■■■ CHADD moved to dismiss Vess's first amended complaint for failure to plead with particularity under Rule 9(b) and for failure to state a claim under Rule 12(b)(6). Vess's entire complaint against CHADD is comprised of allegations of a fraudulent conspiracy with Novartis. Although Vess nowhere uses the word "fraud" in these allegations, the pleading requirements of Rule 9(b) cannot be evaded simply by avoiding the use of that magic word. Where, as here, the averments in the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments. Further, where, as here, the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is "grounded in fraud," and Rule 9(b) applies to the whole of that complaint.

Vess's allegations against CHADD fall far short of satisfying Rule 9(b). Vess does allege that CHADD received $748,000 from Novartis between 1991 and 1994, but that is where the detail both begins and ends. Vess does not explain how CHADD "deliberately attempted to increase the sales of Ritalin," and he identifies no specific "misinformation" distributed by CHADD. Vess's conclusory allegations simply are not "specific enough to give [CHADD] notice of the particular misconduct … so that [it] can defend against the charge and not just deny that [it has] done anything wrong." *Neubronner*, 6 F.3d at 671.

Because Vess declined to amend his complaint further when given the opportunity, we affirm the district court's dismissal of the claims against CHADD with prejudice under both Rule 9(b) and Rule 12(b)(6).

## IV. Motions Under the Anti-SLAPP Statute

 Vess also appeals the district court's determination that his suit constitutes a "Strategic Lawsuit Against Public Participation" ("SLAPP") suit within the meaning of the California statute, Cal. Civ. Code § 425.16. A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions. California's anti-SLAPP statute was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife*, 264 F.3d at 839; *see also United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir.1999) (legislature passed anti-SLAPP statute "in response to [its] concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights"). Specifically, California's anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal.Civ.Proc.Code § 425.16(b)(1). The California legislature has instructed that the statute should be "construed broadly." *Id.* § 425.16(a). Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court. *See Lockheed Missiles*, 190 F.3d at 970–73 (holding that there is no direct conflict between the Federal Rules and §§ 425.16(b) and (c), and that adopting California procedural rules serves the purposes of the *Erie* doctrine). *But see Metabolife*, 264 F.3d at 846 (because the discovery-limiting aspects of §§ 425.16(f) and (g) "collide with the discovery-allowing aspects of Rule 56, these aspects of subsections 425.16(f) and (g) cannot apply in federal court").

 Vess argues that his suit does not come within the paradigm of the SLAPP statute. He states that he is not a large private company seeking to deter private individuals from engaging in political debate, but rather a "little guy" seeking to vindicate his rights under California's consumer protection statutes. While Vess may be right that his is not a paradigmatic example of a SLAPP suit, he is wrong that it does not come within the statute. "Nothing in the statute itself categorically excludes any particular type of action from its operation. . . ." *Navellier v. Sletten*, 29 Cal.4th 82, 92, 124 Cal.Rptr.2d 530, 52 P.3d 703 (Cal.2002). California and federal courts have repeatedly permitted defendants to move to strike under the anti-SLAPP statute despite the fact that they were neither small nor championing individual interests. *See, e.g., DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App.4th 562, 92 Cal.Rptr.2d 755 (2000) (permitting defendant DuPont Merck to invoke anti-SLAPP statute against prospective class action plaintiffs seeking relief under the same statutes on which Vess relies); *Metabolife*, 264 F.3d at 837–38 (defendants included television station); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1128 (N.D.Cal.1999) (defendant was a software company); *see also Wilcox v. Superior Court*, 27 Cal.App.4th 809, 815, 33 Cal. Rptr.2d 446 (Cal.Ct.App.1994) (stating that the defendants in SLAPP suits are not "necessarily local organizations with limited resources"). In sum, Vess's action fits within the statute, particularly in light of the statutory directive that it be "construed broadly." Cal.Civ.Proc.Code § 425.16(a). *See also Navellier*, 29 Cal.4th at 92, 124 Cal.Rptr.2d 530, 52 P.3d 703.

A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Globetrotter Software*, 63 F.Supp.2d at 1129; *see also Wilcox*, 27 Cal.App.4th at 819–20, 33 Cal.Rptr.2d 446. The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's "intentions are ultimately beside the point." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507, 52 P.3d 685 (Cal.2002). Similarly, the defendant bringing a motion to strike need not show that any speech was actually chilled. *See City of Cotati v. Cashman*, 29 Cal.4th 69, 75–76, 124 Cal.Rptr.2d 519, 52 P.3d 695 (Cal.2002).

Second, once the defendant has made a prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Globetrotter Software*, 63 F.Supp.2d at 1129. If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. Cal Civ. Proc.Code § 425.16(b)(1).

The APA and CHADD have made a sufficient showing under the first part of the inquiry. A protected act of free speech includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal.Civ.Proc.Code § 425.16(e)(3)-(4). *See also Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1117–18, 81 Cal.Rptr.2d 471, 969 P.2d 564 (Cal.1999). The APA's protected speech, within the meaning of the statute, consists of the publication of the DSM. CHADD's protected speech consists of its public advocacy activities in connection with the use of Ritalin.

As to the APA and CHADD, Vess cannot make a proper showing under the second part of the inquiry. The district court dismissed Vess's complaint against the APA and CHADD with prejudice under Rules 9(b) and 12(b)(6), and we have affirmed that dismissal. Thus, Vess cannot demonstrate a "probability that [he] will prevail on [his] claim." Cal Code Civ. Proc. § 425.16(b)(1). We therefore affirm the district court's grant of the APA and CHADD's motion to strike under the anti-SLAPP statute.

As to Novartis, however, we reverse. The district court declined to rule on any of the three defendants' motions to strike under the anti-SLAPP statute before it had ruled on the merits of their motions to dismiss under Rule 9(b) and 12(b)(6), deeming such motions premature. Because we reverse the district court's dismissal of Vess's complaint against Novartis insofar as it alleges non-fraudulent conduct, the case is back in the position, as to those allegations, where the district court deemed Novartis's motion to strike premature. We agree with the district court's decision not to rule on the motion with the case in that posture. We therefore reverse, without prejudice, the district court's grant of Novartis's motion to strike under the anti-SLAPP statute.

The district court awarded attorneys' fees to all three defendants under the anti-SLAPP statute. We affirm that award as to the APA and CHADD, who prevailed in their motions to strike. *See Pfeiffer Venice Props. v. Bernard*, 101 Cal. App.4th 211, 123 Cal.Rptr.2d 647, 652

(2002) (holding that a trial court has jurisdiction to award attorneys' fees to a prevailing defendant whose SLAPP motion was not heard solely because the matter was dismissed before defendants obtained a ruling on the SLAPP motion). We reverse as to Novartis.

The judgment of the district court is AFFIRMED in part and REVERSED in part. We REMAND for further proceedings. The APA and CHADD's share of costs on appeal is to be awarded to them. Novartis's share of costs on appeal is to be divided equally between Vess and Novartis.