**HANA FINANCIAL, INC., a California corporation, Plaintiff,**

v.

**HANA BANK, a Korean corporation, Hana Financial Group, a Korean corporation, Defendants.**

**No. CV 07–1534 SVW JWJX.**

United States District Court, C.D. California.

Aug. 1, 2007.

Howard N. Wisnia; D. James Pak, Baker & McKenzie, LLP, San Diego, for the Plaintiffs (Hana Financial Inc).

Carlo van de Bosch, Michelle LaVoie, Sheppard, Mullin, Richter & Hampton, Costa Mesa, for the Defendant (Hana Bank).

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT HANA BANK'S COUNTERCLAIM WITHOUT PREJUDICE [11]

WILSON, District Judge.

## I. INTRODUCTION

This case involves a trademark dispute between two financial services companies that compete for the business of Los Angeles' Korean–American community. On March 8, 2007, Plaintiff Hana Financial, Inc. ("Hana Financial") filed suit against Defendant Hana Bank ("Hana Bank") and its parent company Hana Financial Group. Among other things, the complaint alleges trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). Hana Financial asserts that Hana Bank infringed its trademark by using the "HANA" name to market and sell financial services, thereby confusing the public and improperly suggesting an affiliation between the plaintiff and defendants.

Hana Bank filed an answer and counterclaim on June 7, 2007. The counterclaim alleges that Hana Financial fraudulently procured the service mark at the heart of its lawsuit by knowingly submitting a false oath in connection with the application. More specifically, Hana Bank asserts that it had advertised the "HANA BANK" mark before Hana Financial applied for its "HANA FINANCIAL" service mark. It also alleges that Hana Financial was aware of this use. Therefore, Hana Bank seeks a judgment canceling the "HANA FINANCIAL" mark.

On July 2, 2007, Hana Financial moved to dismiss Hana Bank's counterclaim under Federal Rule of Civil Procedure 12(b)(6). Hana Financial argues that: (1) the counterclaim fails to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b); and (2) the false oath allegedly submitted by Hana Financial in connection with its trademark application cannot constitute fraud as a matter of law.

For the reasons discussed below, this Court GRANTS the motion to dismiss the counterclaim WITHOUT PREJUDICE.

## II. FACTUAL BACKGROUND [1]

### A. The Complaint

Established in 1994, Hana Financial provides financial services in factoring, asset-based lending, equipment lease financing, trade financing, purchase order financing and real estate financing. (Compl. ¶ 10, 11.) Hana Financial owns and uses U.S. Trademark Registration No. 1,987,227 for the service mark "HANA FINANCIAL" and has offered its financial services in the United States under this name since at

---

1. The following descriptions in this section are taken from Hana Financial's complaint and Hana Bank's counterclaim. They do not represent the Court's view of the merits of this case.

least April 1, 1995. (Compl.¶ 14, 15.) The service mark was issued in 1996. (Compl.¶ 23.) Since 1996 or 1997, Hana Financial has promoted and advertised its services under the "HANA FINANCIAL" mark, mostly in Korean-language newspapers, magazines, and television advertisements. (Compl.¶ 16, 17, 18.)

Hana Bank is a Korean corporation that also provides financial services such as asset-based lending and trade financing. (Compl.¶ 22.) Its parent company is Hana Financial Group, also a Korean corporation. (Compl.¶ 6.) In 2001, Hana Bank contacted Hana Financial seeking permission to use the "HANA BANK" name in connection with its financial services business in the United States. (Compl.¶ 24.) Hana Financial declined permission. (Compl. ¶ 24.) Hana Bank subsequently took over the New York Branch of Seoul Bank and in 2002 began using the "HANA" name in the United States without Hana Financial's knowledge. (Compl.¶ 21, 25.) In October 2006, Hana Bank also declared its intention to become a principal financial services player in the Korean–American market. (Compl.¶ 27.) Hana Bank's customers include companies located within this judicial district and throughout California. (Compl.¶ 25.)

### B.   The Counterclaim

Hana Bank (hereafter "Counterclaimant" or "Hana Bank") alleges that Hana Financial (hereafter "Counterdefendant" or "Hana Financial") committed fraud on the United States Patent and Trademark Office ("PTO") in procuring Federal Trademark Registration No. 1,987,227. (Countercl.¶ 5.) Counterclaimant alleges that it advertised the "HANA BANK" mark in this judicial district in connection with financial services prior to the first use dates set forth in Hana Financial's trademark application. (Countercl.¶ 6.) Counterclaimant further alleges that Hana Financial was aware of this prior use before it filed the application. (Compl.¶ 7.) In connection with the application, Hana Financial signed a statement under penalty of perjury stating that it:

> believes the applicant to be the owner of the trademark/service mark sought to be registered . . .; to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

(Countercl.¶ 8.) Hana Financial is alleged to have executed this oath with knowledge that it was false and with "knowledge of Hana Bank's rights in and to the 'HANA BANK' mark." (Countercl.¶ 9.)

## III.   LEGAL STANDARDS

### A.   Legal Standard Governing a Motion to Dismiss Under 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claim stated in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir.2003); *see also* Fed.R.Civ.P. 12(b)(6). The rule applies equally to a counterclaim. *See King County v. Rasmussen*, 299 F.3d 1077, 1090 (9th Cir.2002) (affirming 12(b)(6) dismissal of defendant's counterclaims). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)

"To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint gen-

erally must satisfy only the minimal notice pleading requirements of [Federal Rule of Civil Procedure] 8(a)(2). Rule 8(a)(2) requires only that the complaint include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir.2003) (quoting Fed.R.Civ.P. 8(a)(2)). "All that is required is that the plaintiff give 'fair notice' of the claim and its basis." *Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir.2004). Nevertheless, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *McNamara–Blad v. Assoc. of Prof. Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir.2002). However, a court is "not required to accept legal conclusions cast in the form of factual allegations." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994).

In considering a motion under 12(b)(6), a court generally may not consider any material beyond the pleadings. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002)). However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Branch*, 14 F.3d at 454.

## B. Rule 9(b) Pleading Requirements

■ "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A complaint "alleging fraud must comply with both [Rules] 8(a) and 9(b)." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003). Moreover, "Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud." *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (Cust. & Pat.App.1981). Pleadings should specify the "time, place, and nature of the alleged fraudulent activities." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 2005 WL 2253813, at *2 (N.D.Cal. Sept.16, 2005).

■ "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir.2003). "[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (internal quotation marks omitted).[2]

## IV. ANALYSIS

### A. Fraud in a Trademark Application Oath

■ "Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation, in which case it may function as a 'defense' to a claim of trademark infringement." *eCash Techs., Inc. v. Guagliardo*, 127 F.Supp.2d

---

**2.** See also *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093–95 (C.D.Cal.1999) (Wilson, J.), where this Court summarized the Rule 9(b) pleading standard in some greater detail.

1069, 1079 (C.D.Cal.2000). The defense is disfavored, however, and carries a heavy burden of proof. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990); *eCash*, 127 F.Supp.2d at 1079; *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:68 (2007).

■ Such fraud "occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir.2006) (internal quotation marks omitted). More specifically, a claim of fraud in a *trademark application oath* requires proof of four elements.

> To withstand a motion to dismiss, a plaintiff claiming that the declaration or oath in the defendant's application for registration was executed fraudulently, in that there was another use of the same or a confusingly similar mark at the time the oath was signed *must allege particular facts* which, if proven, would establish that: (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled.

*Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 U.S.P.Q.2d 1203, 1206 (Trademark Tr. & App. Bd.1997) (emphasis added); *Aureflam*, 2005 WL 2253813, at *2 (same); *Ohio State Univ. v. Ohio Univ.*, 51 U.S.P.Q.2d 1289, 1293 (Trademark Tr. & App. Bd.1999) (same); *see also* 15 U.S.C. § 1051(a)(3)(D) (applicant must declare that "to the best of [its] knowledge and belief, no other person has the right to use such mark.").

The Ninth Circuit has remarked that the PTO's Trademark Trial and Appeal Board ("TTAB") is an authority "whose expertise we respect and whose decisions create expectations." *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1095 (9th Cir.2004). *See also Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir.1998) ("We have noted on many occasions that the decisions of the TTAB, while not binding within this Circuit, are nonetheless to be accorded great weight.") (internal quotation marks omitted). Additionally, the Northern District of California recently applied the *Intellimedia* test in analyzing a counterclaim for fraud in an application oath. *See Aureflam*, 2005 WL 2253813, at *2. As both parties here have also analyzed the issue under the *Intellimedia* test in their briefs to this Court, the Court sees fit to do the same.

### B. *Hana Bank Fails to Satisfy Rule 9(b) Pleading Requirements*

Hana Bank fails to satisfy the second, third, and fourth elements of the four-part test outlined in *Intellimedia*. As to the first element, Hana Bank alleges that it advertised the "HANA BANK" mark in this judicial district prior to Hana Financial's first use. (*See* Countercl. ¶ 6; Def. Opp'n at 7.) Assuming that this allegation is true, the use in advertising of the name "HANA" by a competing bank would probably constitute the use of the "same or confusingly similar mark."

### 1. *The Counterclaim Fails to Sufficiently Allege that Hana Bank Had Superior Legal Rights in the "HANA BANK" Mark*

■ Hana Bank erroneously asserts that "Hana Bank's advertisements ... prior to [Hana Financial's] first use of the

mark, give it superior rights as a matter of law." (Def. Opp'n at 7–8.) It is true, as Hana Bank points out, that "[t]he first to use a mark [in commerce] is deemed the 'senior' user" of that mark. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir.1999). Yet, it is also true that "mere advertising by itself" does not necessarily establish such use. *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979). While courts have differed in their approaches to this question, the Ninth Circuit has adopted a totality of the circumstances test for determining whether a "use" is sufficient to establish rights in the service mark. *Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir.2001). Factors to consider include "the genuineness and commercial character of the activity"; "whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark"; "the scope of the non-sales activity relative to what would be a reasonable attempt to market the service"; the degree to which the holder conducts ongoing business activity using the mark; and the amount of business transacted. *Id.* Thus, "although mere advertising by itself may not establish priority of use, advertising combined with other non-sales activity is sufficient to establish use in commerce." *Id.* Under this standard, Hana Bank cannot argue that an alleged advertisement *alone* confers superior rights as a matter of law.

[12] The counterclaim alleges that Hana Bank "advertised its HANA BANK mark in this judicial district in connection with financial services." (Countercl.¶ 6.) Although this allegation suggests at least some activity beyond the advertisement itself, *Intellimedia* would seem to require more. This test calls for the pleading of *particular* facts that would establish Hana Bank's superior legal rights in the

"HANA" mark. 43 U.S.P.Q.2d at 1206. The bare allegation that Hana Bank advertised "in connection with financial services," without more, does not amount to an assertion of "particular facts." It is therefore insufficient.

### 2. The Counterclaim Fails to Sufficiently Allege That Hana Financial Knew of Hana Bank's Superior Rights

■ Even assuming Hana Bank's alleged advertisement could establish its own superior rights to the "HANA BANK" mark, this would not be dispositive of the fraud claim. The counterclaim would still need to sufficiently allege that Hana Financial *knew* Hana Bank had superior legal rights in the mark, which has not been done. *See eCash*, 127 F.Supp.2d at 1081 ("[E]ven if Defendants could amend their Counterclaim to add allegations of additional 'use in commerce' of the 'eCash' mark, and could thereby sufficiently plead their *own* rights to the mark, this would not be sufficient to show 'clearly established' rights.")

■ Because the trademark application oath is "phrased in terms of a subjective belief," it is "extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief" that it is the senior right holder. *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 U.S.P.Q.2d 1440, 1444 (Trademark Tr. & App. Bd.1997); *eCash*, 127 F.Supp.2d at 1079. Mere knowledge of another's actual use of the mark is insufficient to constitute fraud. *Quiksilver*, 466 F.3d at 755. The applicant need not "disclose those persons whom he may have heard are using the mark *if he feels that the rights of such others are not superior to his.*" *Id.* (quoting *Yocum v. Covington*, 216 U.S.P.Q. 210, 216–17 (Trademark Tr. & App. Bd.1982)) (internal quotation marks omitted).

A fraud claim "must consist of more than a mere conclusory allegation that the defendant 'knew' about a third party's superior rights in the mark. The plaintiff must plead particular facts which, if proven, would establish that ... the defendant believed that the third party had superior or clearly established rights." *Intellimedia*, 43 U.S.P.Q.2d at 1207. "It is *only* when another's *rights*, not just *use*, are 'clearly established,' that 'good faith' is eliminated." *eCash*, 127 F.Supp.2d at 1080–81. "[I]f the other person's rights in the mark, vis-à-vis the applicant's rights, are not known by applicant to be superior or clearly established, e.g., *by court decree or prior agreement of the parties*, then the applicant has a reasonáble basis for believing that no one else has the right to use the mark in commerce, and the applicant's ... declaration or oath is not fraudulent." *Intellimedia*, 43 U.S.P.Q.2d at 1207 (emphasis added).

In *Intellimedia*, the Trademark Trial and Appeal Board dismissed under Rule 12(b)(6) a cancellation petition alleging that "the Registrant knew or should have known that Petitioner had superior rights in the mark." *Id.* at 1205. The board held that this allegation was "merely conclusory" and plainly insufficient because it did not plead particular facts that would, if proven, establish the requisite subjective belief. *Id.* at 1207. Similarly, in *Aureflam*, the district court dismissed the defendant's fraud counterclaim where it alleged that "the applicants knew they had no legal claim to exclusive use of the phrase ... and applicants knew that they were falsely and fraudulently declaring that 'no other person, firm, corporation or association has the right to use the above identified mark in commerce.'" *Aureflam*, 2005 WL 2253813 at *2, *4. The court found that "[t]his generalized statement of Aureflam's alleged knowledge containing conclusions but without factual support does not rise to the level of particularity outlined in *Intellimedia Sports* and required by Fed. R. Civ. Pro. 9(b)." *Id.* at *3; *see also eCash*, 127 F.Supp.2d at 1081 ("There is simply no basis for Defendants to claim that their rights, if any, to the 'eCash' mark were so 'clearly established' that the failure by Plaintiff to divulge their use to the PTO constituted fraud."); *Int'l House of Pancakes, Inc. v. Elca Corp.*, 216 U.S.P.Q. 521, 525 (Trademark Tr. & App. Bd.1982) ("The mere fact that applicant received the [trademark] search report and its attorney's letter is insufficient to charge it with knowledge of a third party use.... much less [with knowledge] that the entity had any rights superior to applicant's."); *King Auto.*, 667 F.2d at 1011 (affirming Rule 9(b) dismissal because "[e]ven if the disclosures in the trademark search report supported appellant's contention that Discoverer knew of the alleged third-party use of MUFFLER KING ...", appellant's conclusory statement that Discoverer knew its declaration to be untrue is not supported by a pleading of any facts which reflect Discoverer's *belief*.") (emphasis added); *Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 568 (Cust. & Pat.App.1978) (affirming dismissal of fraud claim because appellant "produced no evidence impugning appellee's beliefs").

Hana Bank's allegations are strikingly similar to those deemed insufficient in *Intellimedia* and *Aureflam*. The counterclaim alleges that "Counterdefendant was aware of Counterclaimant's prior use of the mark HANA BANK to advertise financial services before Counterdefendant filed the Application." (Countercl.¶ 7.[3]) It also

---

**3.** Hana Bank submitted a copy of the trademark application as Exhibit B to its opposition, along with a copy of a newspaper advertisement it purportedly ran on July 14, 1994 using the "HANA BANK" name. (*See* Hana

alleges that "Counterdefendant executed [the application oath] with knowledge that it was false based upon its knowledge of Counterclaimant and its rights in and to the HANA BANK mark." (Countercl.¶ 9.) These allegations "do[ ] not set forth any particular facts which, if proven, would establish that [Hana Financial] *believed,* or had no reasonable basis not to believe," *Intellimedia,* 43 U.S.P.Q.2d at 1207, that Hana Bank had a superior or clearly established *right* to the mark. Without alleging such facts, asserting the mere conclusion that Hana Financial knew or should have known of Hana Bank's superior rights is plainly insufficient. *Id.* Consequently, Hana Bank fails to plead sufficient facts to establish the third element of its fraud claim.[4]

*3. The Counterclaim Fails to Sufficiently Allege that Hana Financial Intended to Procure a Registration to Which It Was Not Entitled*

Given that Hana Bank fails to adequately plead the third element, it has also necessarily failed to adequately plead the

Bank Opp'n Ex. A.) This alleged newspaper advertisement is extrinsic evidence and cannot be considered in ruling on a 12(b)(6) motion. (Incidentally, the advertisement is also almost entirely in Korean and this Court would have no way to evaluate it without a reliable translation.) On the other hand, since the application is a matter of public record, is alleged in the counterclaim, and its authenticity is not questioned by Hana Financial, this Court may properly take judicial notice of it. *Lee,* 250 F.3d at 689.

4. Some courts have applied the Rule 9(b) pleading requirements more leniently in this context. *See, e.g., Enter. Rent–a–Car Co. v. U–Haul Int'l Inc.,* 2006 U.S. Dist. LEXIS 57818, at *9–*11 (E.D.Mo. Aug. 17, 2006) (finding Rule 9(b) requirements satisfied where the counterclaim alleged that plaintiff "misrepresented in a declaration … that no other person … has the right to use" the trademark in question); *Texaco, Inc. v. Allied Chem. Corp.,* 193 U.S.P.Q. 716, 721 (S.D.N.Y.

fourth element. *Intellimedia,* 43 U.S.P.Q.2d at 1208 (Where petitioner has failed to sufficiently plead the third element, "[a] fortiori, petitioner also has failed to sufficiently plead the fourth element of the claim, i.e., that respondent willfully deceived the PTO by failing to disclose petitioner's rights in the mark, in an effort to obtain a registration to which it knew it was not entitled.") In addition, Hana Bank's allegation that "Counterdefendant committed fraud on the United States Patent and Trademark Office in procuring federal trademark registration No. 1,987,227" is a legal conclusion that this Court cannot accept. *See Clegg,* 18 F.3d at 754–55.

### C. Leave to Amend

Hana Financial makes a secondary argument that, assuming its oath was false as alleged in the counterclaim, this fact cannot amount to fraud as a matter of law. For this proposition Hana Financial relies on the Ninth Circuit's holding in *Quiksilver,* which explained that in the face of an

1975) ("When the charge is fraudulent procurement of a trademark registration, allegations of false statements made by the applicant with knowledge of falsity are sufficient under Rule 9(b)."). These cases are not binding on this Court, however, and the weight of persuasive authority cuts more strongly in the other direction. Indeed, the Ninth Circuit's holding in *Robi* provides a helpful guidepost by which Hana Bank's allegations should be measured. In that case, the registrant submitted an incontestability declaration attesting to its ownership rights over a mark, when in fact there had been a prior court decision adverse to its ownership interest. 918 F.2d at 1444. "[G]iven [the registrant's] admitted knowledge of that decision at the time she signed the affidavit, … the affidavit was not only false, but also fraudulent." *Id.* In contrast, Hana Bank has alleged nothing to suggest a court decree or prior agreement that would render its purported rights "clearly established." *See Intellimedia,* 43 U.S.P.Q.2d at 1207.

attestation to the best of one's knowledge and belief, "mere knowledge of [another's existing use of the same mark] does not constitute fraud." 466 F.3d at 755. Hana Financial contends that the counterclaim merely alleges knowledge of Hana Bank's prior *use* of the "HANA BANK" mark, not knowledge of any superior *legal rights* in it, and that any claim must therefore fail as a matter of law. However, Hana Financial does not seem to contend that a false oath can *never* amount to fraud, just that the counterclaim does not allege facts sufficient to support a claim under the law.

Hana Financial's "matter of law" argument is simply another way of arguing that Hana Bank has not pleaded adequate facts under Rule 9(b). It is a factual, as opposed to a legal, defect. Hana Bank could overcome this obstacle if it were to allege, in a First Amended Counterclaim ("FAC"), facts tending to show that Hana Financial had knowledge of Hana Bank's superior rights. "[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (internal quotation marks omitted). Here, it seems possible that Hana Bank could amend its counterclaim to allege additional facts under the legal principles discussed above. *See Intellimedia*, 43 U.S.P.Q.2d at 1208.

For example, in its opposition, Hana Bank attempted to introduce evidence of the advertisement it purportedly ran prior to Hana Financial's first use dates. The Court cannot consider such evidence on a Rule 12(b)(6) motion to dismiss, but Hana Bank could allege that fact and others in a FAC so as potentially to satisfy the elements of a fraud claim.[5] One could con-

struct a hypothetical wherein Hana Bank has a good faith basis for alleging: (1) the time, place and nature of its various advertisements and other commercial activities using the "HANA BANK" mark; (2) how and when Hana Financial actually learned of these advertisements and activities; (3) that Hana Bank and Hana Financial had discussed the "HANA BANK" mark and reached some agreement as to Hana Bank's rights in it, or that a court had previously adjudicated these rights in favor of Hana Bank; and (4) that the same person who was a party to any discussions also signed the application declaration. This hypothetical is only that—a hypothetical—and is offered merely to illustrate that more particularized allegations could possibly comport with the requirements of Rule 9(b) and the *Intellimedia* test.

## V. CONCLUSION

For the foregoing reasons, the motion is GRANTED WITHOUT PREJUDICE. Counterclaimant may file an amended counterclaim within ten (10) days of the date of this order. The Court also sets a new case status conference for August 13, 2007 at 3:00 PM.

IT IS SO ORDERED.

---

5. In revising its FAC, Hana Bank must also contemplate Rule 11(b)(3)'s requirement that "allegations and other factual contentions have evidentiary support or, if specifically so identified, [be] likely to have evidentiary support after a reasonable opportunity for further

investigation and discovery." Fed.R.Civ.P. 11(b)(3).