In re SYNCOR ERISA LITIGATION

**This order relates to: All Actions**

**Nos. CV 03–2446 LGB, CV 03–6503, CV 04–247.**

United States District Court, C.D. California.

Aug. 23, 2004.

---

Christopher Kim, Assistant: Julie, Lisa Ji–Hae Yang (lisayang@lrklawyers.com), Lim, Ruger & Kim, LLP, Los Angeles, CA, Liaison Counsel for Plaintiffs.

Lynn Lincoln Sarko, Elizabeth Leland, David Copley, Keller Rohrback L.L.P., Seattle, WA, Co–Lead Counsel for Plaintiffs.

Ron Kilgard, Gary Gotto, Keller Rohrback P.L.C., Phoenix, AZ, Co–Lead Counsel for Plaintiffs.

Ted Allan Gehring, Gail J. Standish (gstandish@gibsondunn.com), Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Defendants Cardinal Health, Inc., Syncor International Corporation, Robert G. Funari, Robert D. Walter, Paul S. William, and Edwin A. Burgos.

Nancy G. Ross, McDermott, Will & Emery, Chicago, IL, Defendant Monty Fu.

Edward Ciolko (eciolko@sbclasslaw.com) (ext.242), Edward W. Chang, Joseph H. Meltzer (jmeltzer@sbclasslaw.com), Richard S. Schiffrin, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Co–Lead Counsel for Plaintiffs.

Steven M. Goldsobel, Esq., Gordon A. Greensberg, Francisca Mok, Esq., *Chris C. Scheithauer, *Works from orange county office, not LA office, McDermott, Will & Emery, Los Angeles, CA, Defendant Monty Fu.

Amy S. Park (apark@skadden.com), Skadden, Arps, Slate, Meacher & Flom, LLP, Los Angeles, CA, Represents Outside Directors.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT; DENYING DEFENDANT SYNCOR'S MOTION TO DISMISS OR STRIKE MONETARY RELIEF**

BAIRD, District Judge.

## I. INTRODUCTION

This is a class action brought on behalf of all persons who were participants in Syncor International Corporation's ("Syncor's") ERISA plan. The class alleges that Defendants violated their duties to Plaintiffs by investing in Syncor stock while the company was engaged in an international bribery scheme. Currently before the Court are Defendants' motions to dismiss the consolidated amended class action complaint ("complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs in this case were all persons employed at Syncor between July 26, 2000 and January 1, 2003 (the "class period") and participated in Syncor's "Employees' Savings and Stock Ownership Plan" (the "Plan").[1] *Consolidated Complaint* ("CC"), ¶¶ 1, 12–19. The Plan is a 401(k) plan that permits participants to save for retirement and it is an ERISA plan. *Id.* ¶ 2, 39. It also contains a employee stock ownership plan (ESOP), which is designed to invest primarily in the common stock of the company.[2] *Id.,* Exh. A, "Introduction."

Plaintiffs filed the consolidated class action complaint on February 24, 2004

against fiduciaries of the Plan. *CC* ¶ 7. Specifically, Syncor, Syncor's board of directors, and the Plan committee are defendants. Syncor provided high technology health care services and was acquired by or merged with Cardinal Health, Inc. on January 1, 2003. *Id.* ¶ 20. Syncor was the Plan sponsor, a Plan administrator, and a fiduciary. *Id.* ¶ 21. It relied on its board of directors and acted through its officers and employees who were appointed to perform plan-related functions. *Id.* ¶ 22.

The Board of Directors was responsible for appointing the Plan's committee members, and it had final decision making authority regarding all aspects of plan administration. *Id.* ¶ 23. The Board members included: Monty Fu (Syncor's co-founder and chairman of the Board); Robert Funari (Syncor's chief executive officer, president, and Board member); George Oki; Benard Puckett; Ronald Williams; Steven Gerber; Arnold Spangler; and Gail Wilensky. *Id.* ¶¶ 24–31. These defendants are referred to as the "Director Defendants."

The "Committee Defendants" were members of the committee appointed to oversee the Plan's operation and carry out certain delegated Plan administrative duties. *Id.* ¶ 34. The committee members are Edwin Burgon, Sheila Coop, and other individual members whose names are currently unknown. *Id.* ¶¶ 34–36.

Plaintiffs allege that all of the defendants were fiduciaries of the plan. *Id.* ¶¶ 64–74. During the class period, Syncor stock constituted between 66 and 77 percent of the Plan's assets. *Id.* ¶ 63. There were three separate parts of the plan. First, the Plan permitted participants to

---

1. The individual plaintiffs are: Carol Pilkington, Donna Brown, Cynthia Dunn, Antoinette Hart, Shirley Nobrega, Deborah Pinner, Pamela Thomson, and Cherie Brannan.

2. An ESOP is an eligible individual account plan (EIAP) within the meaning of ERISA § 407(d)(3)(A). 29 U.S.C. § 1107(d)(3)(A).

contribute between 1 and 14 percent of their compensation to the Plan each pay period in a "Fund Deferral Account." *Id.* ¶ 53. Plaintiffs could invest in any of nine available investment funds chosen by Syncor. *Id.*, Exh. B, "Summary Plan Description" ("SPD"), at 272, 274. In a separate account, participants could invest up to an additional two percent of pre-tax contributions in Syncor Common Stock. *Id.* This account was the Syncor Stock Deferral Account and was used to purchase Syncor Common Stock. *Id.* Third, Syncor established accounts in which Syncor made employer contributions in the form of Syncor stock. *Id.* at 272. These contributions were made in the "Stock Investment Company Account." *CC* ¶ 59; Exh. B, SPD, at 281.

Plaintiffs allege that Syncor stock was an imprudent investment because throughout the class period Syncor was engaging in an illegal foreign bribery scheme in order to increase overseas sales of its radiopharmaceutical services. *Id.* ¶¶ 79–107. The bribery scheme spanned at least seven different countries and was approved of and implemented by the highest levels of company management. *Id.* ¶ 82. To increase business, Syncor's international subsidiaries made illegal payments to doctors. *Id.* ¶ 85. The payments violated the Foreign Corrupt Practice Act and resulted in the Securities and Exchange Commission (SEC) and the Department of Justice (DOJ) bringing actions against Syncor. *Id.* ¶¶ 84, 87. Prior to and throughout the class period, Defendants emphasized to Plan participants and beneficiaries that international business was a key source of growth for the Company. *Id.* ¶¶ 81, 108–117. Because plan participants did not know about the bribery scheme, Defendants misled them about the appropriateness of investing in Syncor stock. *Id.* ¶ 117.

On June 14, 2002, Syncor and Cardinal Health announced that Cardinal would acquire Syncor in a stock-for-stock merger valued at approximately $1.1 billion. *Id.* ¶ 118. Cardinal announced on November 6, 2002, that while doing its due diligence investigation related to the merger it had uncovered illegal payments made in Taiwan and China. *Id.* ¶ 121. Upon disclosure of the payments, the price of Syncor stock plummeted. *Id.* By November 8, 2002, the stock had hit a 52–week low, and devalued more than 50 percent in just two trading days. *Id.* ¶ 122. The plummeting share values created losses to the Plan which was heavily weighted in Syncor stock. As a result of the allegations, Cardinal reduced the exchange rate of 0.52 shares of Cardinal stock for each Syncor share to 0.47. *Id.* 124. This reduced the consideration to be paid to Syncor shareholders by at least $63 million. *Id.*

As of January 1, 2003 2,895,292.487 common shares of Syncor were in the Plan's stock fund investment option, with a total value of $80,584,348. *Id.* ¶ 47. These shares were exchanged on that date for 1,361,452.073 shares of Cardinal common stock. *Id.* There were no other changes to the provisions of the Plan. *Id.* ¶ 48. Cardinal represented to the Securities and Exchange Commission in an S–8 submission that Cardinal would continue to maintain Syncor's Plan, substituting Cardinal Health shares as the Plan's Company Stock investment alternative and Company matching contribution. *Id.* ¶ 49.

Plaintiffs contend that Defendants either knew or should have known that Syncor stock was not a prudent Plan investment. *Id.* ¶¶ 127–137. Defendants failed to monitor the Plan, to investigate whether Syncor stock was a prudent investment, and to provide Plan participants with information regarding Syncor's improper practices so

that the Plan participants could make informed decisions. *Id.* ¶¶ 130, 133, 138–140.

In addition, Plaintiffs allege that Defendants suffered from a conflict of interest because a significant percentage of their compensation was tied to Syncor stock. *Id.* ¶ 141. As such, Defendants had an incentive to keep the Plan's assets in the Syncor plan and to keep the Syncor Stock Fund investing in Syncor stock. *Id.* ¶ 142. This investment elevated the demand for Syncor stock in the market and retained a favorable impression of the stock with Wall Street analysts. *Id.*

Plaintiffs bring the following causes of action: 1) failure by Syncor and the Committee Defendants to prudently and loyally manage Plan assets in violation of ERISA §§ 404(a)(1)(A)-(D) and 409; 2) failure by Syncor and the Director Defendants to monitor the Committee Defendants and provide them with accurate information in violation of ERISA §§ 404(a)(1)(A)-(D) and 405; 3) failure to provide complete and accurate information to plan participants in violation of ERISA §§ 404 and 405 by Syncor and the Committee Defendants; and 4) breach of duty to avoid conflicts of interest, against all defendants, in violation of ERISA §§ 404 and 405.

Plaintiffs seek the following relief: 1) a declaration that the Defendants have breached their ERISA fiduciary duties to the participants; 2) a declaration that the Defendants are not entitled to the protections of ERISA section 404(c)(1)(B); 3) an order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investments; to restore to the Plan all profits the Defendants made through use of the Plan assets; and to restore all profits the Plan would have made if the Defendants had fulfilled their fiduciary obligations; 4) imposition of a constructive trust on any amounts by which the Defendants were unjustly enriched at the expense of the Plan; 5) an order enjoining Defendants from any further violations of their ERISA fiduciary obligations; 6) actual damages in the amount of any losses the Plan suffered to be allocated among the Participants' individual accounts in proportion to the accounts' losses; 7) an order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the common stock of Syncor maintained by the Plan in proportion to the accounts' losses; 8–10) costs, attorney's fees and other equitable relief. *CC*, at 60–61.

Plaintiffs attach four documents to the complaint. These are: Syncor's Employees' Savings and Stock Ownership Plan (Exhibit A); the Summary Plan Description, (Exhibit B); the Plan Recordkeeping Agreement Between Syncor International Corporation and T. Rowe Price Retirement Plan Services (Exhibit C); and a trustee agreement between Syncor and North Star ESOP & Fiduciary Services, LLC (Exhibit D).

On April 26, 2004 three sets of defendants filed motions to dismiss Plaintiffs' complaint: 1) Monty Fu; 2) Syncor; 3) Robert Funari and Edwin Burgos. Syncor and Funari and Burgos also submitted requests for judicial notice. All three sets of defendants joined in each others' motions to dismiss. On July 6, 2004, Shiela Coop joined in all three motions to dismiss. The other defendants have not yet appeared in the action.[3] Because of the overlapping factual and legal issues, the Court will consider all three motions to dismiss in this order.

---

**3.** The docket does not indicate that Plaintiffs have served the other Defendants.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In reviewing a Rule 12(b)(6) motion, the court must presume the truth of the factual allegations in the complaint and draw all reasonable inferences. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Dismissal under 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (dismissal appropriate only where "plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989).

■■■■ A Plaintiff may attach documents to a complaint and incorporate them by reference. Fed. R. Civ. Pr. 10(c). Documents not attached to the complaint may be considered by the Court on a motion to dismiss if the complaint refers to such document, the document forms the basis for plaintiff's claim, and the authenticity of the document is not questioned. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). The Court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir.2004). Also, documents not mentioned in the complaint, but which are essential to a plaintiff's case and the authenticity of which is uncontested, can be considered by the Court in ruling on a motion. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

## IV. ANALYSIS

### A. Failure to Plead Fraud with Specificity

Defendants allege that Plaintiffs' claims are based on allegations of fraud and must be pled with the particularity required by Federal Rule of Civil Procedure 9(b). *Motion Funari*, at 10–11, 17–19; *Motion Syncor*, at 11–12. Plaintiffs claim that Rule 9(b) is inapplicable to ERISA claims not based on fraud. *Opposition*, at 43–45. Plaintiffs contend that Rule 8(a)'s more lenient pleading standards apply. *Id.*

In the non-ERISA context, the Ninth Circuit recently elaborated on the standard for pleading fraud in which a plaintiff's complaint contains "averments of fraud." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–1105 (9th Cir.2003). In some cases, plaintiffs may allege that defendants engaged in fraudulent conduct and may rely entirely upon that course of conduct as the basis of a claim. *Id.* In those situations, the claim is "grounded in fraud" and the pleading must satisfy the heightened pleading requirement of Rule 9(b). *Id.* at 1103–04. In other cases, plaintiffs may allege some fraudulent and some non-fraudulent conduct as the basis of a claim. *Id.* at 1104. In those cases, only the averments of fraud are subject to Rule 9(b)'s heightened pleading requirement. *Id.* The non-fraudulent conduct must only satisfy the ordinary notice requirements of Rule 8(a). *Id.* at 1105. If

allegations of fraud are insufficiently pled, the court should disregard those averments and determine if the remaining allegations state a claim. *Id.*

Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. Pr. 9(b). In support of their motion to dismiss, Defendants rely upon this Court's order issued on July 6, 2004 dismissing the related securities case. *See Reply Funari*, at 3; *Id.*, Exh. A, *In re Syncor Erisa Litigation*, 03–CV–2446 LGB. In that action, the Court found that Plaintiffs had failed to meet the heightened pleading standard of the Private Securities Litigation Reform Act (PSLRA). The PSLRA pleading requirement is more stringent than Rule 9(b). *See No, 84 Employer–Teamster v. America West Holding*, 320 F.3d 920, 931 (9th Cir.2003). Therefore, the Court's ruling in the securities litigation does not indicate whether Plaintiffs satisfied the pleading requirements under Rule 9(b).[4]

■ Plaintiffs' claims are grounded generally on Syncor's bribery scheme, alleged misstatements, and omissions. Plaintiffs plead specific details regarding the underlying conduct, including details regarding the bribery scheme, and specific misleading or incomplete information. The purpose of Rule 9(b) is to ensure that the defendants accused of the conduct specified have adequate notice of the allegations so that they might defend against them. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir.1995). Plaintiffs' complaint sufficiently apprises Defendants of the allegations

against them unless otherwise noted below.

**B. Claim One: Failure to Prudently and Loyally Manage Plan Assets**

■ Plaintiffs' first cause of action is for failure to prudently and loyally manage the plan assets pursuant to ERISA §§ 404(a)(1)(A)-(D) and 405, 29 U.S.C. §§ 1104(a)(1)(A)-(D) and 1105. Plaintiffs bring this claim against Syncor and the Committee Defendants. They allege that Syncor and the Committee Defendants were fiduciaries and had a responsibility of ensuring that all investments in Syncor stock in the Plan were prudent. *CC* ¶ 156. Defendants allegedly knew or should have known that Syncor was not a suitable and appropriate investment because of the bribery scheme. *Id.* ¶ 159. During the class period the fiduciaries offered Syncor stock as an investment option; approved the Plan's investment in Syncor stock; and provided Company matching funds in Syncor stock. *Id.* Plaintiffs contend that these actions violated Defendants' duty to act with prudence and loyalty. Defendants move to dismiss this claim because Syncor was not on the verge of bankruptcy and the plan language required investment in company stock. *Motion Funari*, at 11–16; *Motion Fu*, at 6.

Section 404(a) of ERISA requires fiduciaries to discharge their duties with prudence, to diversify investments, to act solely in the interest of the participants, and to comply with the terms of the plan in so far as they don't conflict with other ERISA laws. 29 U.S.C. § 1104(a)(1). With regard to prudence, ERISA states, "[A] fiduciary shall discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that

---

4. The Court rejects Defendants' allegations that Plaintiffs' claims are essentially securities fraud claims. *Motion Funari,* at 17. Plain-tiffs clearly seek relief for alleged violations of ERISA.

a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

■ EIAPs are exempt from ERISA's diversification requirements and the prudence requirement to the extent it requires diversification.[5] 29 U.S.C. § 1104(a)(2). Employee stock ownership plans, a type of EIAP, are designed to invest primarily in qualifying employer securities. 29 U.S.C. § 1107(d)(6)(A). The purpose behind ESOP's is to increase employee ownership interest in companies. *Moench v. Robertson*, 62 F.3d 553, 568 (3rd Cir.1995). This goal sometimes conflicts with ERISA's policy of safeguarding the interests of plan beneficiaries through the enforcement of fiduciary responsibility. *Id.* at 569; *see also Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir.1995).

■ In an effort to reconcile these goals, the Third and Sixth Circuits have adopted a prudence standard which requires diversification of employer stock in some circumstances. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir.2004). A presumption exists that a fiduciary who invests in employer stock for EIAP or ESOP plans acted consistently with ERISA. *Id.; Kuper*, 66 F.3d at 1459; *Moench*, 62 F.3d at 571. The plaintiff may rebut the presumption by showing that the ERISA fiduciary could not have reasonably believed that continuing adherence to the plan's terms was in keeping with the plan drafter's intent. *Id.*

In *Wright*, the Ninth Circuit expressed doubt that the prudence standard comports with the plain language of ERISA

section 404(a)(2), which exempts EIAPs from ERISA's diversification requirements. *Wright*, 360 F.3d at 1097–98. However, the Ninth Circuit declined to answer that question definitively, or to establish a different standard. *Id.* Instead, the *Wright* Court assumed that the *Moench* standard applied and considered whether the plaintiffs had rebutted the presumption of prudence. *Id.* The court found that they had not because the case did not "present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing." *Id.* at 1098.

■ "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Id.* at 1099; *Kuper*, 66 F.3d at 1459. A causal link must exist between the failure to investigate and the harm suffered by the plan. To establish a causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment was improvident. *Kuper*, 66 F.3d at 1460.

Defendants allege that the Plan's terms require the fiduciaries to invest in Syncor stock. *Motion Fu*, at 5–6. Plaintiffs counter that the Plan bestowed discretion upon the fiduciaries. *Opposition*, at 20–21. Plaintiffs rely on language granting Syncor and the Committee the discretionary authority to "[e]stablish and review at least annually a funding policy bearing in mind both the short-run and long-run needs and goals of the Plan." *Opposition*, at 20–21; *CC*, ¶ 71; *Id.*, Exh. A, ¶ 16.4. In addition, section 17.2 grants the administrator authority to direct the Trustee to invest Trust Fund assets in one or more Invest-

---

5. ESOPs and EIAPs are treated the same for a fiduciary duty analysis. *Wright*, 360 F.3d at

1098 n. 3.

ment Funds or in Company Stock. *Opposition*, at 21; *CC*, Exh. A, ¶ 17.2. Citing to the same section of the Plan, Plaintiffs note that Defendants had discretion to change the composition of Investment Funds without amending the Plan. *Id.*

The heading of paragraph 17.2 of the Plan states that it refers to the investment funds. *CC*, Exh. A, ¶ 17.2. The plain language of section 17.2 states that a trustee can invest the trust assets in Investment Funds or Company Stock. *Id.* (emphasis added). The word "or" indicates that the investment funds do not include Company Stock. Plan participants invest their Fund Deferral Accounts in the investment funds. *CC*, Exh. B, SPD, at 273. Accordingly, the Fund Deferral Accounts do not contain company stock.

Rather, investments in Syncor stock were deposited in either the Stock Deferral Account or the Stock Investment Company Account. *CC*, ¶¶ 54–59. The Plan specifically required these accounts to consist of company stock. The Plan states: "A Participant's Stock Investment Company Accounts and Stock Investment Participant Account shall be entirely invested in shares of Company Stock except to the extent of any deposit or money market type assets pending investment in shares of Company Stock." *CC*, Exh. A, ¶ 17.8; *see also* ¶ 8.1. Because these are the accounts which contained company stock, they are also the only two accounts which are at issue in this litigation. *See Motion Fu*, at 5–6.

◼ When employers adopt, modify, or terminate welfare plans, they do not act as a fiduciary. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). To the extent Plaintiffs allege the defendants breached their fiduciary duties by not amending the plans, Plaintiffs' claims cannot stand because Defendants are not act-

ing as fiduciaries in that context. *In re Sprint Corp. ERISA Litig.*, 2004 WL 1179371, *8 (D.Kan. May 27, 2004). Accordingly, Plaintiffs' prudence claim is dismissed to the extent it alleges that Defendants should have amended the express terms of the Plan. *Id.*

◼ Under the *Moench* standard, a presumption of prudence applies. *Moench*, 62 F.3d at 571. Plaintiffs argue that a Court may not resolve prudence issues on a motion to dismiss. *Opposition*, 26–29. However, the Ninth Circuit clearly rejected this argument in *Wright* when it affirmed the district court's grant of a motion to dismiss a prudence claim. *Wright*, 360 F.3d at 1098 ("A plaintiff may plead herself out of court...."). The Ninth Circuit is binding precedent in this Court. "A district judge may not respectfully ... disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court. Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect." *Hart v. Massanari*, 266 F.3d 1155, 1169–70 (9th Cir.2001).

The *Wright* court held that a downturn in stock is not sufficient to rebut the presumption of prudence. *Wright*, 360 F.3d at 1099. Unlike in *Wright*, Plaintiffs have not merely alleged stock fluctuations. *Id.* Plaintiffs have also alleged that Defendants seriously mismanaged the company. *See Id.; Wright v. Oregon Metallurgical Corp.*, 222 F.Supp.2d 1224, 1234 (D.Or. 2002) *aff'd by Wright*, 360 F.3d 1090. Plaintiffs allege that Defendants misman-

aged the company by engaging in a bribery scheme which violated the Foreign Corrupt Practices Act and resulted in the SEC and DOJ filing charges. This conduct put the company and Syncor stock at risk. Plaintiffs allege that Syncor's stock dropped significantly as a result of the bribery scheme. *CC*, ¶ 122 (the stock value dropped by more than 50 percent in two days).

Defendants argue that Plaintiffs cannot overcome the prudence presumption because Syncor was not on the brink of collapse. *Motion Funari*, at 11–13. On June 14, 2002, Syncor and Cardinal announced that Cardinal would acquire Syncor for $1.1 billion.[6] *CC*, at ¶ 118. Defendants rely on this figure to support that investment in Syncor stock was not imprudent because the company remained viable throughout its lifetime. According to Defendants, any sort of mismanagement must effect the viability of the company in order to make the investment imprudent.

Defendants rely upon *In re Duke Energy*, 281 F.Supp.2d 786 (D.N.C.2003) to support their argument that the mismanagement must impact the viability of the company in order to overcome the prudence presumption. *Motion Funari*, at 13–14. In *Duke*, the court noted that the decline in stock was attributable to something other than the disclosure of the improper conduct. *In re Duke Energy*, 281 F.Supp.2d 786, 795 (D.N.C.2003). In addition, the stock price had rebounded, and the company was "viable, far from 'impending collapse,' and not in 'dire circumstances.'" *Id.* Accordingly, the Court found that Plaintiff's prudence claim did not survive. *Id.*

Although some cases, such as *Duke Energy*, have required a finding that the company was on the brink of collapse, many other cases have not. *See In re ADC Telecomms., Inc., ERISA Litig.*, 2004 WL 1683144 (D.Minn. July 26, 2004) (declining to apply the prudence presumption at the motion to dismiss stage of the litigation); *In re AEP ERISA Litig.*, 327 F.Supp.2d 812 (S.D.Ohio 2004) (denying motion to dismiss because prudence standard should not be applied on a motion to dismiss); *In re Sprint*, 2004 WL 1179371, *19–20 (rejecting the impending collapse theory, and denying motion to dismiss imprudent investment claim); *Pennsylvania Fed'n v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, 2004 WL 228685, *7 (E.D.Pa. Feb. 4, 2004) ("Although a drop in stock price is not sufficient to win judgment on the breach of the duty of prudence, it is enough to survive a motion to dismiss."); *In re Sears Roebuck & Co. ERISA Litig.*, 2004 WL 407007 (N.D.Ill. March 3, 2004) (denying motion to dismiss where fiduciaries knew or should have known of financial problems and misrepresented those problems).

 The Court in *Wright* did not state that a company must be on the brink of collapse. *Wright*, 360 F.3d at 1098. *Wright* cites to the *Lalonde* district court case which was subsequently overruled by the First Circuit. *Id.citing Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272, 280 (D.R.I.2003) *overruled by Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir.2004) (finding that Plaintiffs had sufficiently given "fair notice" to the defendants under Rule 8(a) and the district court improperly granted the motion to dismiss). The Ninth Circuit relies on language in *Lalonde* stating that the presumption of reasonableness may be overcome when a decline in employer stock is combined with "evidence that the company is on the brink of collapse or undergoing serious mismanagement." *Wright*, 360 F.3d at 1098 (em-

---

6. This amount was later decreased as a result of the allegations against Syncor. *CC*, ¶ 124.

phasis added). The word "or" indicates that the company may be on the brink of collapse or facing mismanagement. In this case, Plaintiffs have pled that the company was facing mismanagement (i.e. the bribery scheme) which resulted in a steep decline in the value of the company stock. Plaintiffs have adequately pled facts in addition to "mere stock fluctuations" which suggest that continued investment in Syncor stock might not have been a prudent investment. *Wright*, 360 F.3d at 1098–99. The Court finds the analysis in *Sprint* persuasive and declines to impose an impending collapse requirement.

Defendants argue that the company was outperforming the Nasdaq and S & P 500 over the alleged class period, and has rebounded after the one-time drop. *Motion Funari*, at 14. This argument is evidentiary in nature and not properly considered on a motion to dismiss. *See, e.g., In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, *8 (N.D.Cal. Sept.30, 2002). This is not a situation where financial statements are attached to the complaint. *Cf. Wright*, 360 F.3d at 1098. The Court will not consider the stock's performance at this stage in the litigation.[7]

Defendants further argue that the illegal bribery scheme does not impact the prudence analysis. *Motion Funari*, at 14–16. Defendants rely upon *McKesson*, a case in which plaintiffs brought ERISA prudence claims against defendants for undisclosed illegal activity which allegedly inflated the company's stock price. *McKesson*, 2002 WL 31431588. The Northern District of California granted the defendants' motion to dismiss the complaint. *Id.* In so doing, the court noted that it found the logic of *Moench* not compelling. *Id.* at 2002 WL

31431588, *5 ("If there is no duty to diversify ESOP plan assets under the statute, it logically follows that there can be no claim for breach of fiduciary duty arising out of a failure to diversify."). However, the court went on to apply the *Moench* standard and found that the plaintiffs' prudence claim lacked sufficient factual details to withstand a motion to dismiss. *Id.* 2002 WL 31431588, *3, 6 ("[P]laintiffs have taken the 'short and plain statement' language too literally for the complaint contains little factual detail and is replete with overly general allegations....").

Contrary to *McKesson*, the Court has found that Plaintiffs' detailed allegations of Defendants' illegal bribery scheme alleges more than a mere stock fluctuation. Therefore, this case is distinguishable from *McKesson*. The Court finds that the illegal conduct does impact the prudence analysis under the *Moench* standard.

However, a plaintiff must also establish a causal link between a defendant's failure to investigate allegations and the harm suffered by the plan. *Kuper*, 66 F.3d at 1459–60. "In order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.*

Plaintiffs allege that the illegal payments were made with the knowledge and approval of senior officers at the relevant Syncor subsidiaries, and in some cases with the knowledge and approval of defendant Fu, who is Syncor's founder, Chairman of the Board, and Plan Fiduciary, among others at Syncor. *See e.g., CC*, ¶¶ 86, 94. These allegations support that Syncor knew of the payments, or should have known of them. However, the com-

---

**7.** The Court may consider documents not mentioned in the complaint, but which are essential to a plaintiff's case and the authenticity of which is uncontested. *Parrino*, 146

F.3d at 706. The Court declines to take judicial notice of the documents at this stage in the proceedings. *See Request For Judicial Notice*, at 17, Exh. B.

plaint fails to allege any facts that support that the Committee Defendants either knew or should have known of the allegations. There is no indication that the Committee Defendants could have discovered the bribery scheme through a reasonable investigation. This is not a situation in which there was information available to the committee defendants if they would have investigated. *Cf. Hill v. BellSouth Corp.*, 313 F.Supp.2d 1361, 1367 (N.D.Ga. 2004) (denying motion to dismiss prudence claim where there were press releases and SEC reports showing accounting errors, and there was evidence of economic and political instability in Latin America where the company was targeting 10 percent of its business). Therefore, the Court finds that Plaintiffs fail to plead facts sufficient to establish a causal link with regard to the Committee Defendants.

Accordingly, Plaintiffs fail to rebut the presumption of reasonableness as to the Committee Defendants, and this claim is dismissed against them. Plaintiffs have sufficiently pled facts to overcome the presumption of prudence with regard to Syncor to survive a motion to dismiss under Rule 12(b)(6).

## C. Claim Two: Failure to Monitor

 Plaintiffs' second claim is for failure to monitor the Committee Defendants and provide them with accurate information in violation of ERISA sections 404(a)(1)(A)-(D) and 405. Plaintiffs bring this claim against Syncor and the Director Defendants. Plaintiffs state that Syncor and the Director Defendants were responsible for appointing and monitoring the Committee Defendants. *CC*, ¶ 166. Plaintiffs contend that the duty to monitor required that Defendants:

(a) Ensure that the monitored fiduciaries possessed the needed credentials and experience ... They must be knowledgeable about the operations of the Plan, the goals of the Plans, and the behavior of Plan participants.

(b) Ensure that the monitored fiduciaries had ready access to such outside, impartial advisors, counsel and experts when needed;

(c) Ensure that the monitored fiduciaries were provided with adequate financial resources to do their job;

(d) Ensure that the monitored fiduciaries had adequate information to do their job of overseeing the Plan investments, especially with respect to ... Company stock;

(e) Ensure that the monitored fiduciaries maintained adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and

(f) Ensure that the monitored fiduciaries reported regularly to the monitoring fiduciaries.

*CC*, ¶ 167. Plaintiffs contend that the monitoring fiduciaries had an obligation to provide the monitored fiduciaries with complete and accurate information in their possession that they knew or should have known that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets. *Id.* ¶¶ 169, 171. In addition, the monitoring fiduciaries had a duty to ensure that procedures were in place to review the performance of the investing fiduciaries. *Id.* ¶ 170. Plaintiffs allege that Syncor and the Director Defendants breached their fiduciary monitoring duties by failing to ensure that the fiduciaries had knowledge about the Company's business problems, and failing to ensure that the monitoring fiduciaries appreciated the huge risk of investing in Syncor stock. *Id.* ¶¶ 172–174.

■ Monty Fu moves to dismiss this claim on the ground that the administrative committee's appreciation of the huge risk inherent in an undiversified stock fund is not a basis for fiduciary liability. *Motion Fu*, at 13–14. Generally, there is no duty to diversify ESOPs. 29 U.S.C. § 1104(a)(2). Congress enacted laws relating to ESOPs to encourage employee ownership in companies, not to guarantee retirement benefits. *Moench*, 62 F.3d at 568. Therefore, by their very nature ESOPs place employee retirement assets at much greater risk than does the typical diversified ERISA plan. *Id.* Therefore, the allegation that the monitoring fiduciaries did not appreciate the "high risk" does not, without more, support Plaintiffs' breach of the duty to monitor claim.

Monty Fu argues that the Plan unambiguously requires the Committee Defendants to invest in Syncor Stock. Fu contends that because the Committee had no discretion to diversify the Stock Deferral Account or the Stock Investment Company Account, Fu had no responsibility to provide the committee members with information about the bribery scheme. *Motion Fu*, at 10–12. Similarly, Fu argues that no causal link exists between the failure to disclose and the alleged harm because the plan fiduciaries had no discretion to diversify the stock. *Id.* at 12–13.

■ The Court's adoption of the *Moench* prudence standard, *supra*, precludes this argument. A fiduciary is required to follow the plan terms only to the extent that the terms do not conflict with ERISA. 29 U.S.C. § 1104(a)(1); *Kuper*, 66 F.3d at 1456; *In re Enron Corp. Secs. Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 549 (S.D.Tex.2003). The Court previously found that Plaintiffs sufficiently pled facts to support that Syncor breached its fiduciary duty of prudence to the Plan fiduciaries. ERISA imposes a fiduciary duty of loyalty and prudence. Defendants are required to comply with the Plan terms, only to the extent that they do not conflict with ERISA. *Id.* Therefore, Defendants cannot escape a duty to monitor by stating that the administrative committee complied with the Plan terms.

Fu and the other Director Defendants argue that securities laws prevented them from providing "non-public information" about the on-going bribery scheme to the Committee Members. *Motion Fu*, at 9–10; *Reply Fu*, at 8–9; *Motion Funari*, at 22. The securities laws make it illegal in some circumstances for those possessing inside information about a company to trade on that company's securities unless they first disclose the information. *Wright*, 360 F.3d at 1098, n. 4.

Defendants rely on dicta in *Wright*, in which the Court noted in a footnote that the "*Moench* standard seems problematic to the extent that it inadvertently encourages corporate officers to utilize inside information for the exclusive benefit of the corporation and its employees. Such activity could potentially run afoul of the federal securities laws." *Wright*, 360 F.3d at 1098, n. 4. The footnote in *Wright* is dicta and the *Wright* Court did not apply it to the facts of the case. The Court finds that the dicta in *Wright* is not binding.

Defendants also rely upon *In re McKesson*, a situation in which the defendants had engaged in illegal accounting practices and materially misrepresented the state of the financial condition of the company. *McKesson*, 2002 WL 31431588, *2. The Court held that ERISA fiduciaries did not have a duty under ERISA to violate insider trading laws in order to protect the interests of the Plan beneficiaries. *Id.* at *6–8.

This same argument was addressed by the court in *Enron*. *In re Enron*, 284

F.Supp.2d at 563–67. The *Enron* court rejected the idea that the defendants could avoid disclosing relevant information in violation of their duty of loyalty because of possible conflicts with the securities laws. *Id.* The court stated that the argument essentially translated into a contention that defendants could both breach their duty under ERISA and become part of the alleged fraudulent scheme under the securities laws. *Id.* The Court rejected this argument: "This Court does not believe that Congress, ERISA, or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them." *Id.*

The *Enron* court relied in part on an *amicus curiae* brief filed by the Department of Labor, the agency responsible for interpreting and enforcing ERISA. *Id.* at 566. The Department of Labor flatly rejected the *McKesson* court's position on the interaction between ERISA and the securities laws. *Id.* The *Enron* court found that the Department of Labor's brief suggested practical ways in which companies can comply with both ERISA and the federal securities statutes simultaneously—starting with disclosing the information to the public at large as well as the shareholders, or forcing the company to do so. *Id.*

The Court finds the analysis in *Enron* persuasive, and declines to follow *McKesson.* Defendants may not avoid any duty they might have to disclose by hiding behind the securities laws.

Monty Fu also seeks to dismiss the claim on the basis that Fu did not have any obligation to force the administrative committee to stop all investments in Syncor stock. *Motion Fu,* at 16. Fu contends that the complaint's statement that

defendants "failed to take action" essentially alleges "that Fu should have taken action to require the Administrative Committee to close down the Plan's investments in Syncor stock." *Id.* The Court does not believe that this is the only form of action which Fu or the other Director Defendants could have taken under their duty to monitor. Therefore, this argument does not support dismissal of the claim.

In support of the motion to dismiss, Fu and the other Director Defendants argue that the duty to monitor did not entail managing the investments, deciding how Plan assets were to be invested, or a duty to communicate information about business practices. *Id.* at 16–17; *Motion Funari,* at 20. Defendants argue that the Director Defendants only had a duty to appoint the Committee Defendants and that such a duty does not include the duty to disclose information. Defendants cite to several cases for this proposition. *Id. citing In re Reliant Energy ERISA Litig.,* 336 F.Supp.2d 646, 659 (S.D.Tex. 2004) (duty to appoint does not "give rise to the expansive duty to disclose all allegedly pertinent information"); *McKesson,* 2002 WL 31431588; *Crowley v. Corning Inc.,* 234 F.Supp.2d 222, 228 (W.D.N.Y.2002); *In re Williams Cos. ERISA Litig.,* 271 F.Supp.2d 1328, 1339 (N.D.Ok.2003).

Other courts have either distinguished the cases relied on by the Defendants or declined to follow them. *See In re Sprint,* 2004 WL 1179371, *19–21. In *In re Sprint,* the Sprint Defendants only had a duty to appoint and remove the committee members. *Id.* The *Sprint* court stated that courts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees. *Id.* The court noted that several cases holding otherwise dealt only with breach of fiduciary duty claims and not the duty to monitor. *Id.citing Crowley v. Corning, Inc.,* 234

F.Supp.2d 222, 229–30 (W.D.N.Y.2002). The Court declined to follow *In re Williams Cos. ERISA Lit.*, 271 F.Supp.2d 1328 (N.D.Okla.2003). The Court finds the reasoning in *Sprint* persuasive.

Courts have repeatedly acknowledged that a board of directors may have a duty to monitor investments, and that the duty sometimes includes a duty to disclose information to committee members. *Id.; Hill v. BellSouth Corp.*, 313 F.Supp.2d 1361 (N.D.Ga.2004); *In re WorldCom, Inc.*, 263 F.Supp.2d 745 (S.D.N.Y.2003); *In re Sears*, 2004 WL 407007, *8. Although the scope of the duty to monitor is often unclear, many courts have declined to dismiss a duty to monitor claim on a motion to dismiss. *See In re ADC Telecomms.*, 2004 WL 1683144, *7 ("Though Plaintiffs make broad allegations under the rubric of the ill-defined and limited duty to monitor, courts have been unwilling to delineate and probe the scope of defendants' monitoring duties on motions to dismiss...."); *In re Sprint*, 2004 WL 1179371, *20 (finding it unnecessary to define the precise contours of the duty to monitor "at this early phase of the litigation," noting that the issue would more appropriately be resolved on the facts of the case).

The Department of Labor's regulations describe the duty to monitor as follows:

At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; *the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.*

29 C.F.R. § 2509.75–8, FR–17 (emphasis added). The scope of the duty to monitor will require a factually intense analysis. *Id.; In re Sprint*, 2004 WL 1179371, *20. The Court declines to determine the scope of the duty at this stage of the litigation.

The Director Defendants seek to impose a reliance requirement on Plaintiffs' complaint. *Motion Funari*, at 17–18. The Court has already determined that Rule 9(b) applies only to portions of the Plaintiffs' complaint, and that Plaintiffs have satisfied Rule 9(b)'s pleading requirements. In the absence of binding authority to the contrary, the Court declines to require Plaintiffs to plead reliance with specificity at the pleading stage of the litigation. Plaintiffs have sufficiently pled that Defendants violated their duty to monitor the Committee.

### D. Claim Three: Failure to Provide Complete and Accurate Information to Plan Participants and Beneficiaries

Plaintiffs' third claim alleges that the duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them, and to disclose information that participants need. *CC*, ¶¶ 181–82. The SPD must be "scrupulously even-handed" in describing plan risks to the participants. *Id.* ¶ 184. Plaintiffs allege that Defendants breached their duty by failing to provide complete and accurate information to Syncor participants regarding Syncor stock, Syncor's business improprieties, the "consequent artificial inflation of Syncor Stock," and information regarding the risks of investing in employer stock. *Id.* ¶¶ 185–186. Plaintiffs bring this claim against the Committee Defendants and Syncor.

The Court has determined that Plaintiffs have failed to plead that the Committee Defendants knew of the bribery scheme.

As such, Plaintiffs cannot support a claim against the Committee Defendants for a failure to provide complete and accurate information about the scheme.

Syncor, through its officers, allegedly made various misleading statements on several dates. These statements related to the success of Syncor and attributed the company's success to overseas' growth. *CC*, ¶¶ 108–116. Defendants argue that these statements were made when the officers were wearing employer, rather than fiduciary, hats. *Motion Syncor*, at 19–20. A defendant may be charged with an ERISA breach only when performing a fiduciary function. *Pegram v. Herdrich*, 530 U.S. 211, 225–26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In this case, the statements pled by Plaintiffs do not support that Defendants made them with the intent to communicate about the security of the benefits plan. *See Varity*, 516 U.S. at 505–506, 116 S.Ct. 1065, 134 L.Ed.2d 130. A defendant does not act as a fiduciary simply because it made statements about its expected financial condition. *Id.* Although Funari commented on the company's success on June 30, 2000 by saying that the company took a number of steps to continue profitable growth and increase shareholder value, the complaint does not support that this statement was made for the benefit of the shareholders. *CC*, ¶ 113. It appears to have been made primarily to trumpet the company's growth to the public. Therefore, the complaint does not support that statements made by the defendants were done in their fiduciary capacity.

Plaintiffs also allege that defendants omitted to state material information. *CC*, ¶ 188. A growing number of courts have required an affirmative duty to disclose information to plan participants in certain circumstances. *See Hill*, 313 F.Supp.2d at 1368–69; *In re Enron*, 284 F.Supp.2d at 555–61 (for overview of growing trend). The Ninth Circuit has required plans to disclose information about plan amendments upon questioning by participants. *Wayne v. Pacific Bell*, 238 F.3d 1048, 1050–51 (9th Cir.2001). In other contexts, the affirmative duty to disclose has only been imposed in "special circumstances with a potentially extreme impact on a plan as a whole, where plan participants generally could be materially and negatively affected." *Hill*, 313 F.Supp.2d at 1368–69.

In this case, Plaintiffs have alleged that Syncor stock constituted up to 77 percent of the plan, that the value of the stock dropped by more than 50 percent upon publication of the bribery scheme, and that the shareholders lost millions of dollars on the Cardinal/Syncor exchange rate. However, a Plan's investment in employer stock is not sufficient to trigger a special circumstance. *Id.* at 1369. In this case, Plaintiffs have not pled that Defendants encouraged investment in company stock knowing that it was imprudent. *Cf. Varity*, 516 U.S. at 505, 116 S.Ct. 1065, 134 L.Ed.2d 130; *Hill*, 313 F.Supp.2d at 1369. Nor have Plaintiffs pled other facts giving rise to a special circumstance. As such, Plaintiffs have failed to plead that Syncor breached its duty to accurately provide information to Plaintiffs.

## E. Claim Four: Breach of Duty to Avoid Conflict of Interest

Plaintiffs allege that Defendants breached their duty to administer the plan with an "eye single" to the interests of the Plan participants. *CC*, ¶ 196–97. Plaintiffs bring this action against all defendants. Plaintiffs allege that Defendants had a conflict of interest because a significant portion of their compensation was in the

form of stock grants or stock options. *Id.* ¶¶ 141–146. Under this theory, corporate defendants would always have a conflict of interest. *See e.g. In re WorldCom,* 263 F.Supp.2d at 768 (allegations that defendant held WorldCom stock was insufficient by itself to create conflict of interest). Plaintiffs make conclusory allegations that Funari and other insiders engaged in insider trading. *CC,* ¶ 144. Plaintiffs plead no facts to support this allegation. Plaintiffs have failed to plead that Defendants suffered from a conflict of interest. The Court grants Defendants' motion to dismiss this claim against all defendants.

### F. Breach of Co–Fiduciary Duty

Throughout the complaint, Plaintiffs allege that Defendants are liable as co-fiduciaries. *CC,* ¶¶ 161, 174, 187. ERISA section 405 imposes liability against co-fiduciaries only when the co-fiduciary has knowledge of another fiduciary's breach, knowingly participates in or conceals a breach by another person, or enables such a breach by an active failure to comply with his own fiduciary obligations under the plan. 29 U.S.C. § 1105(a); *McKesson,* 2002 WL 31431588, *17. Defendants move to dismiss the co-fiduciary claims. *Motion Fu,* at 24–25.

Plaintiffs repeat that Defendants knew of the breaches, participated in the breaches, or made no effort to remedy them. *CC,* ¶¶ 161, 174, 187. Plaintiffs provide no facts to support these allegations. In their opposition to the motion to dismiss, Plaintiffs state that the defendants "clearly had knowledge" because they had a duty to monitor. *Opposition,* at 58. A duty to monitor does not support that defendants possessed knowledge. As such, the co-fiduciary allegations do not state sufficient facts to support a claim on which relief can be granted.

### G. Appropriate Relief

Defendant Syncor moves to dismiss the complaint on the basis that Plaintiffs do not have standing to seek the remedies they plead under ERISA. In the alternative, Syncor moves to strike Plaintiffs' requests for monetary relief.

Plaintiffs seek the following relief: 1) a declaration that the Defendants have breached their ERISA fiduciary duties to the participants; 2) a declaration that the Defendants are not entitled to the protections of ERISA section 404(c)(1)(B); 3) an order to make good to the Plan all losses to the Plan; 4) imposition of a constructive trust on any amounts by which the Defendants were unjustly enriched at the expense of the Plan; 5) an order enjoining Defendants from any further violations of their ERISA fiduciary obligations; 6) actual damages in the amount of any losses the Plan suffered to be allocated among the Participants' individual accounts in proportion to the Plan losses; 7) an order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the common stock of Syncor in proportion to the accounts' losses; 8–10) costs, attorney's fees and other equitable relief. *CC,* at 60–61. Defendants argue that this relief is not available under either ERISA section 502(a)(2) or section 502(a)(3). *Motion Syncor,* at 12–13.

#### a. *Section 502(a)(2)*

Section 502(a)(2) provides that a person may bring a civil action for appropriate relief for a breach of fiduciary duty under section 409. 29 U.S.C. § 1132(a)(2). Section 409 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make

good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . .

29 U.S.C. § 1109(a). An individual beneficiary may bring a breach of fiduciary duty claim but must do so for the benefit of the plan. *Massachusetts Mut. Life Ins. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Any recovery for violation of section 409 and 502(a)(2) "must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries." *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1418 (9th Cir.1991). Defendants contend that Plaintiffs essentially seek individual relief, rather than relief for the Plan. *Motion Syncor,* at 12–18.

■■■ The parties dispute whether a group of individuals within a plan, constituting less than all of the beneficiaries, may seek relief. *Id.* at 17; *Opposition,* at 9–11. The Courts that have refused to allow sub-classes of a plan to recover money damages have done so when the damages benefited only the individuals and not the plan. *See, e.g., Matassarin v. Lynch,* 174 F.3d 549, 566 (5th Cir.1999) (holding that plaintiff's claims benefited only herself or at most, the sixty-seven Plan participants who had been offered lump-sum distributions); *Horan,* 947 F.2d at 1417–1418 (suit on behalf of 24 plan participants seeking to obtain annuities for each individual defendant did not benefit the Plan and was not appropriate under section 409 and 502(a)(2)). The Court agrees with Defendants that the relevant inquiry is not the size of the purported class, but whether Plaintiffs seek recovery for themselves or on behalf of the Plan. *Reply,* at 10–11.

Plaintiffs bring this action on behalf of all persons who were participants in or beneficiaries of the Plan at any time be-

tween July 26, 2000 and January 1, 2003 and whose accounts included investments in Syncor Common Stock. *CC,* ¶ 1. The Court has already concluded that the Fund Deferral Accounts are not in dispute because they did not include Syncor stock. However, individuals who invested in Fund Deferral Accounts are still impacted by Syncor stock. That is because Syncor matched 50 percent of employees' contributions in these Fund Deferral Accounts up to four percent of an employees' regular pay. *CC,* Exh. B, "SPD" at 272. Syncor's contributions were made with Syncor common stock. *Id.* at 275.

Plan participants could also invest an additional one to two percent of their income in Syncor common stock in the Stock Deferral Account. *Id.* at 274–275. Syncor would contribute one matching share of common stock for each whole share an employee purchased. *Id.* at 275. For all Plan participants, Syncor had the discretion to contribute "special allocations" of Syncor stock to Plan participants' accounts. *Id.*

Therefore, every Plan beneficiary possessed Syncor stock. They could have acquired the stock by purchasing it as part of the Syncor Stock Deferral Account, or Syncor could have deposited it in their account as either a matching contribution or as a special allocation.

Plaintiffs ask for relief in the form of money damages as follows:

C. An Order compelling Defendants to make good to the Plan all losses to the Plan . . . ; to restore to the Plan all profits the Defendants made . . . ; to restore to the Plan all profits that the Plan would have made . . . ;

F. Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual

accounts in proportion to the accounts' losses;

G. An Order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the common stock of Syncor maintained by the Plan in proportion to the accounts' losses attributable to the steep decline in the stock price of Syncor.

*CC*, at 60. The first provision clearly seeks relief on behalf of the Plan. Defendants argue that the second two provisions essentially seek individual relief which is not permitted under section 502(a)(2). *Motion Syncor*, and 14–17. Defendants state that the monetary relief sought is really damages on behalf of individual participants which would require individual determinations. *Id.* at 17.

Defendants rely upon *Milofsky v. American Airlines, Inc.*, in which the court found that the plaintiffs lacked standing to bring the claims because they sought reimbursement to their individual accounts rather than benefits to the Plan. *Milofsky v. American Airlines, Inc.*, 2003 WL 22398799 (N.D.Tex. Sept. 24, 2003). Although plaintiffs filed a "class action complaint," the court found that the plaintiffs were ultimately asserting individual claims, seeking to reimburse losses to their individual accounts. *Id.* at *4.

In *Milofsky*, the plaintiffs did not seek relief on behalf of the plan, and there was no indication that the entire plan was impacted. In this case, the entire plan is impacted because all beneficiaries have Syncor stock—acquired either through their individual investments or the company's matching stock. Plaintiffs seek relief for the entire plan. However, they seek to have the damages allocated to the individual accounts of all Plan participants who have any investment in Syncor common stock, proportionately to the account losses. Defendants contend that this essentially constitutes individual relief.

Syncor has attached an unpublished opinion from the district court of New Jersey in support of this assertion. *Reply Syncor*, Exh. A, *In re Schering–Plough Corp. ERISA Litig.*, No. 03–1204. In *Schering–Plough*, plaintiffs sought relief in the form of "[a]ctual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses." *Id.* at 9. The New Jersey court relied on this language and found that the suit was on behalf of individuals. *Id.* at 9–14. Not all plan beneficiaries possessed stock in the company. Investing in company stock was just one of several investment alternatives available to plan participants, and the company did not invest in company stock for the benefit of the savings plan. *Id.* at 12.

Here, the company did invest in company stock in the form of matching contributions. Therefore, all plan participants were impacted by Syncor stock. The Court finds that the relief sought would benefit the plan. The Court declines to find that a request to allocate relief among the Participants' individual accounts in proportion to the accounts' losses constitutes individual relief. The Court agrees with Plaintiffs that such a finding would leave 401(k) plan participants without a remedy for money damages under ERISA.[8] As such, the Court finds that Plaintiffs seek relief on behalf of the Plan as required under ERISA section 502(a)(2).

---

8. Defendants argue that this finding might result in a single beneficiary bringing a class action every time the stock prices drop. *Reply Syncor*, at 13. The Court finds that sufficient procedural safeguards exist to prevent this from occurring.

### b. Section 503(a)(3)

Because the Court finds that Plaintiffs may seek monetary relief under section 502(a)(2), the Court need not determine whether monetary relief is appropriate under section 503(a)(3).

### c. Injunctive Relief

Plaintiffs seek equitable relief in the form of either, i) elimination of the Company stock fund as a plan investment alternative; or ii) alternatively a) the appointment to the Committee of a qualified person unaffiliated with Syncor or Cardinal Health, and b) the distribution to Plan participants appropriate materials addressing fully and accurately the risks associated with investment in company stock. *Complaint*, ¶ 209. Defendants argue that all of Plaintiffs' claims for equitable relief are moot. *Motion Syncor*, at 21–22. Defendants state that because of the merger with Cardinal Health, the Syncor Plan, in essence, no longer exists. There are no allegations that Cardinal Health is an imprudent investment. *Id.* Further, Defendants contend that the relief sought is too broad and essentially orders defendants to obey the law. *Reply*, at 20.

Plaintiffs argue that the claims are not moot because changes made to the plan by Defendants were voluntary and the Defendants may resume the conduct at issue. *Opposition*, at 15. Plaintiffs also argue that there is overlap between the class period, the amendment of the Plan, and Cardinal's ratification of actions related to the Plan. *Id.* Plaintiffs contend that they should be entitled to conduct discovery regarding events that have transpired with regard to Syncor's transition to Cardinal Health. *Id.*

Plaintiffs' complaint alleges that no changes were made to the Plan other than the exchange of Cardinal stock for Syncor. *See CC*, ¶ 47–49. Defendants request the Court take judicial notice in support of their contentions that the equitable relief sought is moot. *Motion Syncor*, at 22. Although the Court finds Defendants' arguments convincing, it is unwilling at this stage in the litigation to determine what equitable relief is appropriate.

Because the Court has determined that Plaintiffs may seek monetary damages, the Court will not dismiss the complaint for lack of standing. Similarly, the Court will not strike the request for monetary damages or hold Plaintiffs' requests for equitable relief moot.

## V. CONCLUSION

The Court hereby:

1. **DENIES** Syncor's motion to dismiss or in the alternative motion to strike monetary damages;

2. **GRANTS** Defendants' motion to dismiss **Claim One** as to the Committee Defendants, but not as to Syncor;

3. **DENIES** Defendants' motion to dismiss **Claim Two**;

4. **GRANTS** Defendants' motion to dismiss **Claim Three** against the Committee Defendants and Syncor;

5. **GRANTS** Defendants' motion to dismiss **Claim Four** against all Defendants;

6. **GRANTS** Defendants' motion to dismiss all **co-fiduciary claims** against the defendants.

**IT IS SO ORDERED.**